STATE, Respondent, v. NEMOIR, Appellant.

*No. State 148. Argued January 4, 1974.—Decided February 5, 1974.*

(Also reported in 214 N. W. 2d 297.)

For the appellant there was a brief and oral argument by *Thomas L. Massey* of Fond du Lac.

For the respondent the cause was argued by *Christine W. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. Defendant's brief on appeal raises three challenges to his conviction on the charge of first-degree murder: [1] (1) Sufficiency of the evi-

[1] Sec. 940.01, Stats., provides: "**First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

dence; (2) propriety of prosecutor's closing argument; and (3) admissibility of result of polygraph test.

(1) *Sufficiency of evidence.*

Defendant does not claim any insufficiency of the evidence to establish that he pointed the gun, pulled the trigger, shot and killed the murder victim. Rather, he submits that the evidence establishes that he was intoxicated and could not have intended to kill the victim because he was intoxicated. There is dispute in the testimony as to whether defendant was intoxicated, and the resolving of that dispute was for the jury to determine,[2] not for an appellate court.[3] The question for the trier of fact was not whether defendant had been drinking, and how much, but whether there was such degree of intoxication as "negatives the existence of a state of mind essential to the crime." [4] In a first-degree murder case, intoxication is not a defense if defendant still possessed the requisite intent to kill.[5] The degree of

[2] *See: State v. Stevens* (1965), 26 Wis. 2d 451, 464, 132 N. W. 2d 502, this court stating: " . . . The credibility of these witnesses and the weight to accord their conflicting testimony were properly a function for determination by the jury. . . ."

[3] *See: Tobar v. State* (1966), 32 Wis. 2d 398, 403, 145 N. W. 2d 782, certiorari denied, 390 U. S. 960, 88 Sup. Ct. 1059, 19 L. Ed. 2d 1157, this court stating: "The appellate court is not a place to reargue questions of credibility."

[4] Sec. 939.42, Stats., provides: "**Intoxication.** An intoxicated or a drugged condition of the actor is a defense only if such condition:

"(1) Is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or

"(2) Negatives the existence of a state of mind essential to the crime."

[5] *See: Roberts v. State* (1969), 41 Wis. 2d 537, 546, 164 N. W. 2d 525, upholding trial court finding that defendant's drinking did not impair his capacity for entertaining a felonious intent and discussing the degree of intoxication in relation to the ability to form and entertain a *mens rea* in first-degree murder cases.

intoxication required is such degree that the person is "utterly incapable of forming the intent requisite to the commission of the crime charged." [6]

Capacity or incapacity to form the requisite intent may be inferred from the acts and conduct of a defendant as well as from testimony given by defendant or witnesses on his behalf.[7] Here credible evidence which the jury was entitled to accept established that, as to events immediately prior to the killing, the defendant asked his friend to accompany him to the second-floor living quarters, that he walked up the stairs, that he knocked on the door and stepped aside to let his friend talk to the victim, and that he pulled out his revolver while his friend was talking to the victim. Similar credible evidence established that when his friend suggested they leave, defendant lunged at the door, pulled it open, raised his gun and, holding it an

[6] *State v. Guiden* (1970), 46 Wis. 2d 328, 331, 174 N. W. 2d 488, this court stating: ". . . The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged."

[7] *Id.* at pages 331, 332, this court stating: "The physical facts, as well as the defendant's testimony, do not provide a basis for finding here such inability to form intent to burglarize. . . . The contention of the defendant has to be that he was sober enough to know enough to run after the car and away from the officers with the stolen TV set, but too drunk to form an intent to burglarize. The contention is not very persuasive. The capacity to form intent is to be inferred from the acts and conduct of a defendant, as well as from his self-description of his state of sobriety. Here his actions speak at least as loud as his words, and both establish that he was not unable to intend to do what he did do."

inch or two from the victim's face, pulled the trigger. Similarly, credible evidence established that defendant then ran down the stairs, opened the door of his friend's car to say, "Let's get out of here," that he got into his own car, started the motor, killed the engine and started it again, backed the car into the road and drove off at a high speed. Given these facts and circumstances surrounding the fatal shooting, a jury, acting reasonably, could be convinced beyond reasonable doubt that the defendant possessed the requisite intent to kill.[8]

(2) *Propriety of prosecutor's argument.*

Defendant's objection is to a single sentence of four words in the prosecutor's rebuttal argument. Responding to defense counsel's argument to the jury that defendant was so intoxicated that he could not have possessed the required intent to kill, the prosecutor countered:

". . . I will tell you how intoxicated he was: He goes up these steps when it is raining, and he did what he did. He comes back down and tells Mr. Ott 'Let's get out of here.' Why would he want to get out of there if he was intoxicated? He gets in his car and tries to get out of there—slams down on the accelerator—kills it; starts it again, then he drives on the Kettle Moraine roads fast. You jurors know how great they are! *And he drives home.*" (Emphasis supplied.)

Defendant's objection, at trial and now, is that there is no evidence in the record that the defendant drove

---

[8] *Irby v. State* (1973), 60 Wis. 2d 311, 313, 210 N. W. 2d 755, this court stating: "We have examined the record and have come to the conclusion the jury on the evidence presented, which it had a right to believe and accept as true, acting reasonably could be convinced of Irby's guilt beyond a reasonable doubt. . . . The evidence is not so insufficient in probative value and force even though much of it is circumstantial that it can be said as a matter of law that no trier of fact acting reasonably could be convinced to the degree of certitude required in criminal cases. . . ."

home. The tavernkeeper testified to seeing the defendant get into his car, start the engine, kill the motor and start it again, and drive off at a high speed. The sheriff and deputy sheriff testified that the defendant was arrested at his home at 3:45 a. m. Except for the starting off at the tavern and ending up at his home, there is no evidence that defendant drove, or drove directly home. However, it is an entirely reasonable inference from the testimony that he did so. There is no suggestion either as to stop-offs or any substitution of drivers on the way home. Closing arguments, whether by district attorney or defense counsel, may deal with reasonable inferences that may be drawn from the testimony as well as with the testimony itself.[9] Additionally, prosecutors and defense counsel may give their personal opinions limited to the evidence adduced at trial.[10] When objection was made to the sentence, "And he drives home," the trial court stated, "That will be up to the jury." To the extent

---

[9] "The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein. . . . There are, however, certain well-established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts." 23A C. J. S., *Criminal Law*, pp. 128, 129, sec. 1090.

[10] *State v. Cydzik* (1973), 60 Wis. 2d 683, 694, 695, 211 N. W. 2d 421, this court stated: ". . . This court has rejected the strict rule against a prosecutor expressing an opinion based on the evidence. In this state a prosecutor may give his personal opinion limited to the evidence actually adduced at trial. . . ." Citing and quoting *Embry v. State* (1970), 46 Wis. 2d 151, 160, 161, 174 N. W. 2d 521, stating: ". . . In Wisconsin a prosecutor or a defense counsel may comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces him and should convince the jurors. . . ."

that they considered the matter of how he got home of consequence, it was for the jury to decide whether it was a reasonable inference that the defendant, who started out from the tavern and ended up at home, had done the driving in between. It was not improper for the prosecutor to suggest or urge that they so infer.

(3) *Admissibility of polygraph test.*

Twenty-eight pages out of 32 pages of argument in defendant's brief are addressed to the claimed error in not permitting the result of a polygraph test taken by defendant to be introduced into evidence. The offer of proof at time of trial stated that the polygraph examiner would testify to a lack of deception response when defendant stated that he did not intend to kill the victim. But the defendant did not take the stand, and his offer of proof does not suggest that he would take the stand if the court ruled the opinion of the polygraph examiner to be admissible in any manner or for any purpose. Where a defendant elects not to take the stand as a witness, and makes no offer of proof to do so if results of a polygraph test are admitted into evidence, we see no foundation established for seeking to have lie detector test results introduced into evidence. A polygraph examiner's testimony as to deception responses or lack of deception responses, as evidenced by systolic blood pressure readings, relates to the matter of credibility of the test-taker. Cases and text authorities cited by defendant's counsel deal with the use of test results for corroboration or impeachment purposes.[11] We find no

---

[11] *See, for example: United States v. Ridling* (D. C. Mich. 1972), 350 Fed. Supp. 90, cited by defendant, requiring examination by court-appointed examiner before an examination by an expert chosen by defendant can be admitted into evidence, and stating that ordinarily, in criminal cases, the prosecution could only use such "character" evidence if defendant takes the stand and defendant could use this evidence only if his character as to truthfulness were attacked. (*Id.* at page 98.) *See also: State v. Valdez*

suggestion that even the expert opinion of an eminently qualified polygraph examiner could serve as a substitute for direct courtroom testimony of the person who took the test.[12] Whatever breaches may come in the wall of resistance to the introduction of polygraph test results into evidence, we doubt that they will be suggested or be accepted as surrogate testimony.[13] Their use as a substitute for direct testimony would take away any opportunity for cross-examination or for the jury to observe the demeanor and manner of testifying of the witness.[14]

---

(1962), 91 Ariz. 274, 283, 371 Pac. 2d 894, holding polygraph evidence to be admissible when offered by a defendant to corroborate his own testimony *if he takes the stand* with four specific requirements: (1) Written stipulation signed by the prosecutor, defense attorney and defendant; (2) court discretion to exclude polygraph evidence if not convinced of examiner's qualifications or propriety of examination conditions; (3) opposing party to have opportunity to cross-examine as to examiner's qualifications, test conditions and possibility of error; and (4) jury to be instructed that polygraph testimony is corroborative only with weight to be given for jury to determine.

[12] *See: State v. Lowry* (1947), 163 Kan. 622, 627, 185 Pac. 2d 147, stating: "The practical effect of the admission of this testimony was to constitute a mechanical device—as reported by the operator—a sort of witness *in absentia* on the question of the defendant's guilt or innocence." *See also: Henderson v. State* (1951), 94 Okla. Crim. 45, 54, 230 Pac. 2d 495, certiorari denied, 342 U. S. 898, 72 Sup. Ct. 234, 96 L. Ed. 673; *People v. Zazzetta* (1963), 27 Ill. 2d 302, 307, 189 N. E. 2d 260; *Boeche v. State* (1949), 151 Neb. 368, 377, 37 N. W. 2d 593.

[13] *State v. Bohner* (1933), 210 Wis. 651, 659, 246 N. W. 314, holding polygraph evidence inadmissible and stating: ". . . If the defendant in a criminal case is to be permitted to have tests taken outside of court and then to produce expert testimony as to the results of the tests when these are favorable to him, *without the necessity of taking the stand* or submitting to tests by the prosecution, the way would seem to be open to abuses that would not promote the cause of justice." (Emphasis supplied.)

[14] *See: United States v. Stromberg* (D. C. N. Y. 1959), 179 Fed. Supp. 278, 280, stating: ". . . The most important function served by a jury is in bringing its accumulated experience to bear upon

While the members of this court may not be in full accord as to whether there are circumstances and conditions under which the results of a polygraph examination might be considered admissible in evidence at trial, we are in full and complete accord that, where a defendant does not take the stand in a criminal case or by offer of proof indicate his willingness so to do, there is no basis or foundation laid for reconsidering decisions holding polygraph test results inadmissible in this state.[15]

*By the Court.*—Judgment affirmed.

witnesses testifying before it, in order to distinguish truth from falsity. Such a process is of enormous complexity, and involves an almost infinite number of variable factors. It is the basic premise of the jury system that twelve men and women can harmonize those variables and decide, with the aid of examination and cross-examination, the truthfulness of a witness. But a machine cannot be examined or cross-examined; . . ."

[15] *See: State v. Baker* (1962), 16 Wis. 2d 364, 368, 114 N. W. 2d 426, this court stating: ". . . The results of such a test [polygraph] are inadmissible, as the state concedes. . . ." *See also: Meyer v. State* (1964), 25 Wis. 2d 418, 425, 130 N. W. 2d 848; *State v. Perlin* (1955), 268 Wis. 529, 537, 68 N. W. 2d 32; *LeFevre v. State* (1943), 242 Wis. 416, 425, 8 N. W. 2d 288; *State v. Bohner, supra,* at page 658.