STAPLES, Plaintiff in error, v. STATE, Defendant in error.

*No. 75-485-CR.  Argued September 14, 1976.—*
*Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 679.)

14

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. The defendant, a Minnesota resident, was staying with friends at 1725 John avenue in the city of Superior, Douglas county, Wisconsin. The building at this address is a four-unit apartment complex. Defendant was staying with people who lived on the second floor. Willard J. Perry had an apartment

on the first floor and, in addition to his usual employment, operated a small gun shop at this address.

The series of incidents which resulted in the instant prosecution occurred on December 31, 1974. Perry first saw the defendant about a week prior to this date. At about 7:30 p.m. on December 31, 1974, defendant came to his apartment and asked to use the telephone. Perry allowed the defendant to make two telephone calls after which the defendant left. Perry went to work about 9:30 p.m. and returned at approximately 8 a.m. on January 1, 1975. The door to his apartment was locked when he left and upon his return he found a boarded-up hole in his door, with a note asking him to come to the police department. Perry found missing from his apartment six weapons (three pistols, two rifles and one shot gun), some beer, a couple of dollars in change and a bottle of wine. At trial, the six weapons were identified and introduced in evidence.

Daniel Larsen was an employee of the Yellow Cab Company. He testified that while working on the evening of December 31, 1974, he responded to a call, received through his dispatcher, at 1725 John avenue, Superior. At this address, he picked up the defendant who was carrying a blanket, which was introduced as evidence at the trial. The blanket had "something underneath it." The "something" turned out to be the weapons from Perry's apartment. After the defendant was in the back seat of the cab, he told Larsen they would be going 60–70 miles. Larsen observed a silver barrel pistol pointed at his neck, so he agreed to do anything the defendant wanted. Defendant directed Larsen out of the city, turn-by-turn to highway #35. When they were a short distance out of Superior, the defendant climbed over into the front seat, still holding the pistol on Larsen, and indicated that they were going to Danbury, Wisconsin. Larsen gave a code-message to his dispatcher that he was in trouble.

Larsen further testified that the defendant warned him on two or three occasions that if he tried anything that he (the defendant) would kill him. He was afraid of the defendant and his fear was the only reason he later jumped out of the cab. He testified that the defendant brought some beer with him and drank one or two cans while on the ride.

About 25–30 miles south of Superior on highway #35, Larsen looked in his rearview mirror and saw that he was being followed by a squad car. He stated that the defendant was drinking a beer and trying to light a cigarette and had temporarily laid the pistol down. While defendant was so distracted, Larsen slowed the cab down to 10–15 miles per hour and jumped out. The pursuing city squad car picked him up and they followed the cab, which was then being operated by the defendant, for three or four miles at about 30 miles per hour, with the squad car's red lights flashing. The cab went through a one-car roadblock set up by a county officer, damaging the officer's car, and subsequently was forced off the road after two or three miles by the county squad car. Defendant was there arrested and the weapons and blanket in the cab seized by the law enforcement officers.

The defendant never admitted actually taking the weapons from Perry's apartment; however, he had complete recall of his 7:30 p.m. visit to the Perry apartment and the telephone calls and of substantially all the events that occurred after getting into the taxicab. His principal defense was intoxication.

In our opinion, this review presents two issues:

1. Did the trial court commit reversible error in restricting the evidence offered by the defendant of his alcoholism?

2. Did the trial court commit reversible error when it received a certified copy of a prior conviction of the defendant after the defense had rested its case?

## EXCLUSION OF EVIDENCE OF ALCOHOLISM.

The state introduced evidence from a number of witnesses who saw or came in close contact with the defendant during and immediately after the commission of the crimes; that, in their opinions, he was not intoxicated. The cab driver, Larsen, testified that the defendant "didn't seem to be real drunk." Gaylord Palm, Superior police officer, one of the officers who apprehended defendant, testified that based on "[h]is breath, on his speech, on the looks of his eyes, his walking and his turning ability," he did not believe that the defendant was intoxicated. James Cronin, Superior police officer, who was also present at the apprehension of the defendant, testified that the defendant was not in an intoxicated condition at that time. Robert Bennett, Detective Lieutenant Superior police, who interviewed defendant shortly after his arrest, testified that in his opinion defendant was not drunk enough so that he did not understand what he was doing or talking about, and that the defendant was not intoxicated.

The defendant, twenty-four years of age, testified that he drank nine quarts of beer on the day in question, plus the cans of beer consumed during the taxicab ride. Defense counsel attempted to establish chronic alcoholism by questioning the defendant himself. Prior to the objection of the district attorney, the defendant had testified extensively as to his general drinking habits and problems. The jury heard that as a young child he was given alcoholic beverages by his parents; that by the time he was twelve he began drinking on his own at least three or four times a week; that between the ages of twelve and twenty he regularly drank alcoholic beverages and missed some high school classes; that between the age of twenty and the time of trial he drank 65 or 70 percent of his waking hours; that while working on his last job he missed one day of work; and that he quit his

job and left town because of embarrassment over an incident in which he had gotten drunk and was later told that he had almost killed his mother's boy friend, had struck his mother and had thrown furniture around. The trial court sustained the objection of the district attorney to further questioning of this nature. The trial court did not err in sustaining the objection.

Section 939.42, Stats., concerns the subject of intoxication as a defense to criminal liability. Its focus is on the state of intoxication of the perpetrator at the time of the commission of the crime. It provides:

"*939.42 Intoxication.* An intoxicated or a drugged condition of the actor is a defense only if such condition: .
"*(1)* Is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or
"*(2)* Negatives the existence of a state of mind essential to the crime."

▮▮ Sec. 939.42 (1), Stats., specifically concerns involuntary intoxication. Sec. 939.42 (2) has been consistently interpreted to pertain to voluntary intoxication as well. *State v. Mills* (1974), 62 Wis.2d 186, 214 N.W.2d 456, and *Gibson v. State* (1972), 55 Wis. 2d 110, 197 N.W.2d 813. Alcoholism, in itself, is not now and never has been a separate defense to criminal liability in this state. *State v. Nemoir* (1974), 62 Wis.2d 206, 214 N.W. 2d 297; *Roberts v. State* (1969), 41 Wis.2d 537, 164 N.W.2d 525. This court has, however, recognized that proof of alcoholism may be relevant to the defense of involuntary intoxication raised under sec. 939.42 (1). This court, in *Roberts v. State, supra,* stated at pp. 545, 546:

"Roberts argues he has a defense under sec. 939.42 (1), Stats. If Roberts had been intoxicated to the point that he could not distinguish between right and wrong in respect to the shooting of Mrs. Howe when he shot her . . . and such intoxication was involuntary because he

suffered from a type of chronic alcoholism which compels involuntary drinking to satisfy a psychological or physiological dependency thereon, Roberts would have a defense. But the evidence does not prove such involuntariness or drunkenness."

■ ■ Whether or not a person is an alcoholic is a matter to be established by expert medical opinion and proper medical proof, and not by the defendant, himself. *State v. Freiberg* (1967), 35 Wis. 2d 480, 151 N.W.2d 1. Even then ". . . Not every person commonly called a 'chronic alcoholic' is addicted to the point where he has a physiological or psychological dependency upon alcohol and his drinking is so involuntary and compulsive that one might argue he is irresponsible for his acts. . ." *Roberts v. State, supra,* p. 543.

■ Whether or not the defendant was a chronic alcoholic such that his condition compelled ". . . involuntary drinking to satisfy a psychological or physiological dependency. . ." was a matter to be proved by expert medical testimony and proper medical proof. Defense counsel expressed no intent to provide such proof. Any further statements by the defendant as to his drinking habits would be merely cumulative of the nature of the evidence already admitted when the trial court sustained the objection of the district attorney.

■ A further reason exists for holding that the trial Court's exclusion of further testimony of the defendant as to that subject was not prejudicial error. Under the affirmative defense of involuntary intoxication set forth in sec. 939.42 (1), Stats., the defendant has the burden of establishing both that his intoxication was involuntary and that he was intoxicated to the point where he was ". . . incapable of distinguishing between right and wrong in regard to the alleged criminal act. . ." Proof of alcoholism would go to prove involuntariness. If the required degree of intoxication is not proved, then

the defense fails anyway, and any error made with regard to the first element would be harmless.

Not only did the defendant fail to prove intoxication to the state of being "incapable of distinguishing between right and wrong" (No evidence whatever was introduced on this point), the defendant also failed to prove that he was intoxicated to the lesser degree of intoxication required to trigger a sec. 939.42 (2), Stats., defense.

■ The defense of voluntary intoxication offered by sec. 939.42 (2), Stats., is applicable when the degree of intoxication "[n]egatives the existence of a state of mind essential to the crime." This court has several times passed on the degree of intoxication which is necessary to render one incapable of forming or entertaining a *mens rea* under sec. 939.42 (2). *Smith v. State* (1946), 248 Wis. 399, 21 N.W.2d 662; *Lasecki v. State* (1926), 190 Wis. 274, 208 N.W. 868; and *State v. Christiansen* (1936), 222 Wis. 132, 267 N.W. 6. The court in *State v. Guiden* (1970), 46 Wis.2d 328, 331, 174 N.W.2d 488, expressed the degree of intoxication required as follows:

". . . The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. . . ."

To be relieved of responsibility for criminal acts, it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged. *State v. Guiden, supra,* p. 331; *Garcia v. State* (1976), 73 Wis.2d 174, 184, 242 N.W. 2d 919. His intent is a state of mind existing at the time of the commission of the offense and his state of

mind may be determined from his acts, his conduct, his own self description of his state of sobriety, and from inferences fairly drawn from the circumstances. *State v. Guiden, supra,* p. 332; *Strait v. State* (1969), 41 Wis. 2d 552, 559, 164 N.W.2d 505.

■ The question as to whether the defendant was or was not intoxicated to such a degree as "[n]egatives the existence of a state of mind essential to the crime," as required by sec. 939.42 (2), Stats., was for the jury to determine. *State v. Nemoir, supra.* Based upon the credible evidence presented in the instant case, the jury could and did find the defendant not to be so intoxicated.

The defendant argues that his own credibility as to his own statements that he was so intoxicated, would have been enhanced had the evidence of his past history of inebriacy been admitted. The defendant's own statements are but one way for the jury to determine the degree of intoxication as it affected his state of mind. The jury may still consider his acts, his conduct and inferences fairly drawn from the circumstances of the commission of the crime.

■ The overwhelming weight of the evidence in this case fairly points to the conclusion that the defendant was not so intoxicated so as to negative the existence of intent in the commission of the charged crimes. In addition to the testimony of the witnesses, the inference that can be fairly drawn from the facts and circumstances surrounding the commission of the crimes do support a finding that the defendant was not so intoxicated as to negative the existence of intent. The contention of the defendant must be that he was sober enough to enter the taxicab carrying a blanket concealing the several weapons; to tell Larsen they were going 60–70 miles to Danbury while holding a gun at Larsen's head; to give the driver turn-by-turn instructions to get out of Superior to highway #35; to climb into the front seat while the cab was in motion and hold the gun on Larsen; to take

over the driving of the cab after going 25 or 30 miles; to elude one roadblock and continue to drive two or three miles before being forced into the ditch; and at the same time to be too drunk to form an intent to commit the crimes. We do not find such a contention persuasive.

Under the circumstances of this case, further testimony from the defendant to show that he was an alcoholic was immaterial to the defense of either involuntary or voluntary intoxication and, therefore, properly refused by the trial court.

## EVIDENCE OF PRIOR CONVICTION.

The information charged the defendant with the three charges for which he was convicted. It further contained, as provided in secs. 939.62 and 973.12, Stats., a repeater allegation. After the defendant had testified in his own behalf, in fact he was the only witness to do so, the defense rested.

The trial court then inquired of the state if there would be any rebuttal. Whereupon, the state filed a certified copy of a prior conviction of the defendant. It is stamped or marked "filed" by the clerk and not identified as an exhibit as were the six weapons and other items of evidence that were introduced during the trial. In response to an inquiry from the trial court as to whether defense counsel had any objections, counsel stated, "Yes, I object. I don't think it's appropriate to put that in at this time." No motion for a mistrial was made. The trial court found a certified copy of the judgment to be competent and admissible evidence and stated, "I take it that it's being offered by the State and admitted into evidence as it might affect the credibility of the defendant?" Both the state and the defendant then rested.

There is no evidence that the certified copy of the judgment was ever read to the jury or that it went to the jury. In fact, as indicated, it was not marked as an ex-

hibit. The instructions to the jury included the general and standard instruction as to prior conviction of a crime as it bears upon credibility of the defendant as a witness.

The procedure followed in the instant case was not the approved manner in which evidence of prior convictions can be introduced to impeach a witness. *State v. Bailey* (1972), 54 Wis.2d 679, 196 N.W.2d 664; *Nicholas v. State* (1971), 49 Wis.2d 683, 183 N.W.2d 11; *State v. Adams* (1950), 257 Wis. 433, 43 N.W.2d 446. However, under the facts of this case the procedure used does not constitute reversible error.

Sec. 274.37, Stats., provides:

*"274.37 Judgments; application to reverse or set aside; new trial; reversible errors.* No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

In view of the evidence as a whole, in this case, it cannot be said that the state's filing of the certificate of conviction was so prejudicial that had it not been done, a different result might have been reached, or prejudicial in the sense that it affected the substantial rights of the defendant. It is our opinion, after a full examination of the record, that the substantial rights of the defendant were not affected and that no reasonable jury could have fairly come to any other decision. *State v. Rice* (1968), 38 Wis.2d 344, 156 N.W.2d 409.

In response to the burglary charge, defendant testified that he did not recall going back down to Perry's apartment after Perry left for work; that to his knowledge, he did not break the panels in Perry's door; and that

to his knowledge, he did not take any weapons, rifles or guns out of Perry's apartment that day. Yet he testified that he did take with him a blanket to the taxicab and that it concealed beer and weapons (three pistols, two rifles and a shot gun) which items were later identified as those stolen from Perry's apartment.

As to the kidnaping charges, the defendant did recall being in the taxicab, but he testified that he could not answer truthfully whether he did point a gun at Larsen's head: "I said I could have and I don't know if I did." Although he did recall having the gun in his possession, he testified that he did not recall telling Larsen that he would shoot him or blow his brains out.

As to the operation of a motor vehicle without the owner's consent charge, the defendant testified that he did try to control the taxicab after Larsen exited, and his testimony reflects that he did recall some aspects of the subsequent events, *i.e.*, the chase by the police.

The defendant's testimony was largely that he could not recall certain events or that to his knowledge they did not occur. The jury could have fully believed him; could have fully believed that he couldn't honestly recall any of the events; could have fully believed his testimony that he was indeed "real drunk" and yet have still convicted him of the charges. For whether he could recall the events or not had no bearing on his guilt or innocence. That was firmly established by the overwhelming weight of the balance of the evidence.

Furthermore, in this case the defendant did not move for a mistrial based upon the filing of the certificate of conviction. We have repeatedly held that failure to move for a mistrial constitutes a waiver. In *Mulkovich v. State* (1976), 73 Wis.2d 464, 469, 243 N.W.2d 198, it was stated:

". . . Moreover, in a criminal case, a defendant who delays a motion for a mistrial knowing that grounds exist prejudices the state in the operation of its criminal

law system and causes inordinate delay and an unnecessary expenditure of public funds. . . ."

In the instant case, no motion for mistrial based upon the alleged error was ever made.

The judgment of conviction is affirmed, and the trial court properly denied the defendant's postconviction motions.

*By the Court.*—Judgment and order affirmed.