LOVEDAY, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–386–CR.  Argued October 5, 1976.—
Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 116.)

504

For the plaintiff in error there was a brief and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. The following issues are presented on this appeal:

1. Was it prejudicial error for the trial court to exclude testimony relating to the defendant's addiction to drugs?

2. Was it prejudicial error for the trial court to exclude testimony relating to the defendant's state of mind due to his drugged and intoxicated condition at the time of the offense?

3. Was the defendant denied a fair trial because of the failure of the prosecution to supply exculpatory evidence to the defendant at trial?

4. Did the trial court err in instructing the jury?

5. Was it error to admit the defendant's confessions into evidence because they were the products of an illegal arrest?

*Evidence of Addiction*

The defendant sought to prove the defense of involuntary intoxication under sec. 939.42(1), Stats., which states:

"An intoxicated or a drugged condition of the actor is a defense only if such condition:

"(1) is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; . . ."

■ This defense contains two elements; (1) that the condition is involuntarily produced; (2) that the actor is rendered incapable of distinguishing between right and wrong. In an effort to prove that the defendant's claimed drugged condition at the time of the crime was involuntarily produced, the defendant at trial attempted to elicit testimony that he was addicted to drugs. The trial court refused to allow such testimony. The testimony so disallowed included the defendant's own asser-

tions that he was "hooked on drugs" and the answers of the psychiatrists, Dr. William Crowley and Dr. Alan Reed, to hypothetical questions concerning the defendant's claimed addiction.

The question presented, therefore, is whether evidence that defendant was addicted to drugs is relevant to the issue of whether his drugged condition was involuntarily produced.

These kinds of question relating to his defense have been considered often by courts especially in regard to alcoholism and intoxication. The principles of those decisions concerning alcoholism are clearly applicable here, for the defense of intoxication is equated with the defense of drugged condition. *See Gibson v. State*, 55 Wis.2d 110, 114, 197 N.W.2d 813, 816 (1972) ; 1 Wharton's (Anderson) *Criminal Law*, sec. 49, at 115 (1957).

Two distinct views have emerged in the law regarding this issue of addiction and involuntariness. The more generally accepted rule is that the phrase "involuntary intoxication or drugged condition" does not contemplate a condition which is the result of an addict's dependency no matter how irresistible the compulsion may be. Under this rule intoxication or a drugged condition will be regarded as involuntary only when it is the result of force or fraud on the part of a third person or the result of mistake by the defendant, such as where he lacks knowledge of a substance's intoxicating effects. 22 C.J.S. *Criminal Law*, p. 221, sec. 69; *State v. Seely*, 510 P.2d 115, 120–21 (Kan. 1973) ; *State v. Bunn*, 283 N.C. 444, 457–58, 196 S.E.2d 777, 786 (1973).

The other viewpoint as to addiction and involuntariness proceeds from the decision of the United States Supreme Court in *Robinson v. California*, 370 U.S. 660 (1962). In *Robinson* the accused was charged under a statute which made it a crime to be addicted to narcotics. The court held that such addiction was a disease and the ac-

cused's condition was merely symptomatic of that affliction. Thus, the court concluded, the accused could not be punished for his condition. The rationale of *Robinson* was extended to cases involving public drunkenness where the accused was an alcoholic in *Driver v. Hinnant,* 356 F.2d 761 (4th Cir. 1966), but the supreme court rejected that extension in *Powell v. Texas,* 392 U.S. 514 (1968). The court in *Powell* distinguished the *Robinson* case by stating that the accused was not charged for being an alcoholic but for being drunk in public. The rule in *Powell* indicates that the *Robinson* rationale only applies where the alleged unlawful conduct is the accused's condition. Furthermore, as Justice MARSHALL notes in *Powell* at p. 588:

"[*Robinson*] does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some cases, 'involuntary' or 'occasioned by a compulsion.' "

The notion that addiction is an irresistible urge to take alcohol or drugs has not been fully accepted, either medically or judicially. *See* Fingarette, *Addiction and Criminal Responsibility,* 84 Yale L.J. 413 (1975) ; *United States v. Moore,* 486 F.2d 1139, 1148–53 (D.C. Cir. 1973).

In Wisconsin a conflict exists between the apparent legislative intent of the intoxication defense statute and dictum statements of this court regarding addiction and involuntariness. In *Roberts v. State,* 41 Wis.2d 537, 164 N.W.2d 525 (1969), the court recognized a distinction among those persons who may be termed alcoholics:

"Not every person commonly called a 'chronic alcoholic' is addicted to the point where he has a physiological or psychological dependency upon alcohol and his drinking is so involuntary and compulsive that one might argue he is irresponsible for his acts." *Roberts v. State, supra* at 543, 164 N.W.2d at 527.

This distinction was also recognized by the United States Supreme Court in *Powell v. Texas, supra,* where the court took note of the lack of medical agreement as to the manifestations of alcoholism.

As to the defense of involuntary intoxication, the court in *Roberts, supra* at 545–46, 164 N.W.2d at 529, stated:

"If Roberts had been intoxicated to the point that he could not distinguish between right and wrong . . . and such intoxication was involuntary because he suffered from a type of chronic alcoholism which compels involuntary drinking to satisfy a psychological or physiological dependency thereon, Roberts would have a defense."

Recently, in *Staples v. State,* 74 Wis.2d 13, 245 N.W.2d 679 (1976) this court found the exclusion of testimony that the defendant was a chronic alcoholic not to be prejudicial error, because the evidence clearly showed that the defendant could not establish the second element of the involuntary intoxication defense, that he was incapable of distinguishing right from wrong. The court stated, however, that "[p]roof of alcoholism would go to involuntariness." *Id.*

Thus, the statements of this court in *Roberts* and *Staples,* while making it clear that alcoholism alone will not establish involuntariness, indicate that there could be cases where an accused is so addicted to narcotics or alcohol that consumption would be involuntary.

These statements are not consistent with the intent of the legislature in the enactment of the involuntary intoxication statute. Sec. 939.42, Stats., was enacted as a part of the 1955 revision of the Wisconsin Criminal Code, and was first proposed as sec. 339.42 of the 1953 Draft of the Wisconsin Criminal Code. The comments of the Judiciary Committee following that section in the 1953

Draft make it clear that the term "involuntary" only contemplated intoxication through force, fraud or mistake.

"In order to show that the intoxication was involuntary, it generally is necessary to show that it was induced by force or fraud on the part of a third person, or that it resulted from a mistake on the part of the actor as to the intoxicating nature of the thing he consumed." Wisconsin Legislative Council, Judiciary Committee Report on the Criminal Code (Feb., 1953), 33–34.

The Judiciary Committee further makes reference to the annotation at 30 A.L.R. 761 (1924) for the question of when intoxication is involuntary. Addiction is not considered by any of the cases in that annotation as a basis for involuntariness.

We think that sec. 939.42(1) should be interpreted to exclude addiction as a basis for "involuntariness" under the statute. This conclusion is based upon three considerations. First, this interpretation would effectuate the apparent legislative intent of the statute. The statute is intended to provide a defense where an accused becomes intoxicated or drugged without exercise of his own will. An addict, however, could not have consumed drugs the first and the many succeeding times without an exercise of will. Although narcotics or alcohol withdrawal is an admittedly painful process, the addict still retains some ability to extricate himself from his addiction.

Second, in the light of considerable medical disagreement regarding the manifestations of addiction, a jury surely could not decide on any reasonable basis whether an accused was one of those so addicted that he had lost self-control in taking the drugs or alcohol. This problem is even more complicated in a case such as this where the evidence clearly shows a substantial amount of alcohol consumed in conjunction with the drugs, to which the accused claimed addiction.

The third consideration is the effect of this holding upon an accused who is truly physically dependent upon a drug or alcohol. To hold that even the most compulsive addiction cannot establish involuntariness on that basis would merely result in the addict seeking the voluntary intoxication defense under sec. 939.42(2), Stats. The effective difference between the two defenses is that for the involuntary intoxication defense the accused must show that he could not tell right from wrong at the time of the offense, while under the voluntary intoxication defense he must show that his condition negatived the intent necessary to commit the crime. To hold the addict to this latter showing may not be considered punishing him for his affliction or disease.

■ Our adoption of this holding compels the finding of no error on the part of the trial court in excluding testimony of the accused's claimed addiction. Insofar as the language in *Roberts, supra* at 543 and 545–46, 164 N.W.2d at 527 and 529, and *Staples, supra* at 6, differ from this opinion, that language is withdrawn.

*Voluntary Intoxication*

The defendant made attempts at trial to establish the defense of voluntary intoxication under sec. 939.42(2) which states:

"An intoxicated or a drugged condition of the actor is a defense only if such condition:

". . .

"(2) Negatives the existence of a state of mind essential to the crime."

Two psychiatrists, Dr. William Crowley and Dr. Alan Reed, were called by the defense to answer hypothetical questions as to whether the defendant's intoxicated and drugged condition would be such as to negative the state of mind essential to the intentional taking of a human life. The trial court refused to allow answers to these questions.

Dr. Crowley's testimony was not allowed on the basis of sec. 971.16(3), Stats. This section in substance requires that any medical report of a defendant's mental condition be forwarded to the district attorney at least 3 days before trial. Because of noncompliance, the trial court concluded that sec. 971.16(3) forbade the testimony of Dr. Crowley in the way of answers to hypothetical questions going to the defendant's intoxicated and drugged condition at the time of the offense.

The defense contends, and we agree, that sec. 971.16(3) does not apply to cases where the testimony is used to prove an intoxication defense. This section is intended to apply only where the question of a mental disease or defect of the defendant may be in issue.

Sec. 971.16(3) excludes testimony as to the "mental condition" of the defendant. The established rules of statutory construction show that the language "mental condition" refers to the defense of mental disease or defect. *See* 2A Sutherland, *Statutory Construction,* sec. 51.03 (4th ed. 1973). It is clear that the entire sec. 971.16 deals with medical examinations when the sanity defense is in issue.

The state argues that the voluntary intoxication defense does raise the issue of mental disease or defect. This court, however, has held directly to the contrary. In *Gibson v. State,* 55 Wis.2d 110, 116, 197 N.W.2d 813, 817 (1972), the court stated:

"We do not consider that a voluntary drugged condition is a form of insanity which under the American Law Institute test of insanity can constitute a mental defect or disease."

Therefore the trial court erred in excluding Dr. Crowley's answers to these hypothetical questions on the basis of sec. 971.16(3).

This conclusion places Dr. Crowley's answers on the same plane as Dr. Reed's answers, which were also ex-

cluded. No valid reason is presented for the exclusion of the answers of either psychiatrist.

This error, however, as is often the case with the defense of intoxication, may not be considered prejudicial. The evidence here could not have been the basis for a finding that the defendant was unable to form the intent to kill the victim or, even under the involuntary intoxication defense, that he could not distinguish between right and wrong.

It is recognized that where the defendant shoots his victim in a vital part, intent to kill is presumed. *Smith v. State,* 69 Wis.2d 297, 303–04, 230 N.W.2d 858, 862 (1975). To establish this defense the defendant is obliged to rebut this presumption. The evidence offered in rebuttal was the defendant's testimony as to the tremendous amount of alcohol he consumed in addition to the drugs he took. Further evidence was the statements of the psychiatrists that a person of the defendant's physical dimensions could not have formed intent to kill after consuming these intoxicants in the manner the defendant did.

The capacity or incapacity to form the requisite intent, however, may be inferred from the acts and conduct of the defendant as well as from his testimony. *State v. Nemoir,* 62 Wis.2d 206, 211, 214 N.W.2d 297, 300 (1974). It is first apparent that the defendant's testimony as to the events surrounding this crime casts serious doubt as to the credibility of his testimony concerning his intake of intoxicants. Dr. Reed testified that he would not be able to believe a person who asserted he had consumed those amounts and who still could testify with considerable accuracy as to the circumstances of the shooting.

The defendant recalled his movements on the day of the crime. He remembered what he had done that evening and the number of bottles of beer he had drunk. He testified as to the activities at his girl friend's house before the encounter with the victim. The defend-

ant recalled his activities as far as to what side of the sidewalk he and Arredondo were on as they approached the victim. He stated Arredondo and the victim began fighting, that Arredondo was swinging the shotgun at the victim, and that he did not go to the aid of Arredondo because Arredondo had the advantage in the fight. After stating Arredondo shot the victim, the defendant testified that he then contrived the plan that he would take the blame for his young friend in the event "something happened." He stated he was concerned that Arredondo might have to go to prison at such a tender age. This testimony as to the conception of the plan to protect Arredondo shows that the defendant appreciated the wrongfulness and criminality of his offense. Furthermore, the defendant and Arredondo ran from the scene to the defendant's house. The shotgun was hidden by the defendant underneath his mattress and the spent shell was hidden in his sister's closet. The testimony in this record compels the conclusion that the jury would not have reached a different conclusion had the psychiatrists' testimony been admitted. *See Zastrow v. State,* 62 Wis.2d 381, 388–90, 215 N.W.2d 426, 430–31 (1974).

### Exculpatory Evidence

■ Prior to trial the defense made a timely demand for all exculpatory evidence. This court has recognized an affirmative duty on the part of the state to disclose to the defense any material or information within its possession or control which tends to negate the guilt of the defendant. *Nelson v. State,* 59 Wis.2d 474, 479, 208 N.W.2d 410, 412 (1973) ; *Brady v. Maryland,* 373 U.S. 83, 87 (1973). This rule applies even though the evidence goes only to the credibility of a witness. *Nelson v. State, supra* at 481, 208 N.W.2d at 413.

The defendant contends that the state withheld a statement made by the defendant's girl friend, Debbie Sayas.

This statement was in regard to the question of who, the defendant or Arredondo, had possession of the shotgun when they left her house just prior to the encounter with the victim. Both Arredondo and the defendant testified that the other had the shotgun when they left.

At the hearing on postconviction motions Debbie Sayas testified that several times prior to trial she had told both the prosecutor and defense counsel that she could not recall who had the shotgun when the boys left her house. She also stated she told the prosecutor that the defendant had the shotgun a few moments before the boys left while they were in the basement of the house. The prosecutor stated that he did not remember her ever stating she did not recall who had the murder weapon. Debbie Sayas further testified that she had another conference with the prosecutor during the trial in which she told him she now remembered Arredondo had the shotgun "because when Stanley kissed me goodnight . . . he didn't have nothing in his arms." The prosecutor stated he did not specifically recall that statement.

A new trial is only required where the evidence would in reasonable likelihood have altered the judgment of the jury. *State v. Calhoun,* 67 Wis.2d 204, 215, 226 N.W.2d 504, 509 (1975). "The primary concerns are materiality and the exculpatory nature of the evidence as limited by the doctrine of harmless error." *State v. Amundson,* 69 Wis.2d 554, 577, 230 N.W.2d 775, 787. Recently the United States Supreme Court has reiterated that no constitutional error will arise unless the withheld evidence is material and defined materiality as whether the omitted evidence creates a reasonable doubt which did not otherwise exist. *United States v. Agurs,* 44 U.S. L.W. 5013 (U.S. June 24, 1976).

Apparently the trial court was convinced that Debbie Sayas was not a credible witness. The examination of her by the prosecutor at the postconviction motion

hearing showed that her statement that Arredondo had the shotgun would have been impeached by her previous contradictory statements on several occasions that she could not recall who had the shotgun. Her testimony would have possibly added to the impeachment of Arredondo's statements, but it would not have been very convincing that Arredondo was lying. The defense had already called four witnesses who testified that Arredondo had stated he shot the victim, and yet the jury still believed his version of the offense. In addition, the other evidence, particularly the defendant's confessions, presented an extremely formidable case. Therefore, we are satisfied that this evidence would not have raised a reasonable doubt or altered the result, and consequently a new trial is not warranted on this ground.

*Adequacy of Instructions*

The defendant claims that a new trial is required because the trial judge inadequately instructed the jury. Instructions given to a jury are to be considered in their entirety, and if the error is rendered harmless because of other correct statements of law contained in the instructions, there are no grounds for reversal. *Werner v. State,* 66 Wis.2d 736, 750, 226 N.W.2d 402, 408 (1975). Furthermore, even if the error is not rendered harmless by other portions of the instructions, there is no reversible error unless it may reasonably be said that had the error not been made, the verdict might probably have been different. *Werner v. State, supra; Claybrooks v. State,* 50 Wis.2d 79, 86, 183 N.W.2d 139, 143 (1971).

The defendant's first objection relates to five instructions, requested by defense counsel, which the trial judge advised he would give to the jury, but failed to do so. The major thrust of this contention is that defendant was deprived of an effective closing argument due to the failure of the trial judge to give these instructions. The closing arguments, however, are not a part of the record,

and the defendant has not shown in any way that the argument was rendered ineffective.

The basic question, therefore, is not whether defendant was deprived of an effective closing argument, but simply whether it was reversible error to fail to give these specific instructions.

Three of these instructions are of lesser importance. Defendant's requested instruction No. 22 states the rule that the jury may, where a party fails to ask a question of its own witness, infer that, had the question been asked, the answer would have been unfavorable to that party. Requested instruction No. 30 states that to consider a dying declaration the jury must find that the victim was aware of impending death. Requested instruction No. 37 relates to the bias of a witness against the defendant and that such bias may be considered in determining the weight to be given that witness' testimony. We believe it cannot reasonably be said that had any or all of these three instructions been made, the verdict of the jury might probably have been different.

The other two instructions, which, defendant claims, the judge said he would give but did not, were in substance communicated to the jury. Defendant's requested instruction No. 24 states that in considering the oral statements and written confession of the defendant the jury could consider whether or not the defendant was in a drugged condition at the time he made the statements and confessions. Instructing the jury, the trial judge stated:

"In considering whether any statement or part of it is trustworthy, you should consider . . . the defendant's psychological response to the surrounding physical facts.
". . .
"In considering the defendant's psychological response to his surroundings, you should consider the defendant's . . . mental condition. . . .
". . .
"If, at the time defendant made any such statement against interest, his mental or physical condition either

from exhaustion, physical fatigue, or previous indulgence in intoxicants was such as to deprive him of his normal mental facilities to the extent that he did not understandingly make such statement, or understand the substance and import of it, then it is your duty to disregard such statement."

The jury was instructed that it should consider the defendant's condition at the time he made statements and confessions.

Requested instruction No. 80 is a statement of the voluntary intoxication defense. Again, although the exact words of this instruction were not given to the jury, the judge instructed the jury as to this defense. The judge instructed:

"In this case, defendant is charged with the crime of first degree murder of which one of the essential elements is the intent to kill George Socha, Jr. The defendant claims that, at the time of the alleged offense, his condition from the use of intoxicating liquor or drugs was such that he did not form such intent.

"If the defendant, because of his condition, was incapable of forming and, therefore, did not form the intent to kill, then you must not find him guilty of murder in the first degree as charged in the information.

"If you have any reasonable doubt as to whether or not he was so intoxicated or drugged, you must give the defendant the benefit of that doubt and find him not guilty of murder in the first degree."

██ Thus, no reversible error was committed by the trial judge in failing to give those specific instructions which, defendant claims, the judge said he would give, but did not.

The defendant also claims error by the trial court in refusing to give five other instructions. First, defendant argues that the jury should have been instructed specifically as to the immunity granted to Arredondo. The jury, however, was aware of the immunity grant and was given the standard instruction on the credibility of wit-

nesses. This standard instruction sufficiently allowed the jury to properly evaluate the credibility of Arredondo's testimony.

The defendant further claims that the trial judge should have instructed the jury that prior consistent statements are not corroborative of the trial testimony. This requested instruction is directed to lab reports, police notebooks, and police reports which were admitted into evidence.

As to whether such an instruction concerning prior consistent statements is necessary, McCormick states:

"No sound reason is apparent for denying substantive effect when the statement is otherwise admissible. The witness can be cross-examined fully. No abuse of prepared statements is evident. The attack upon the witness has opened the door. The giving of a limiting instruction is needless and useless. The trend is in accord with these suggestions." McCormick, *Evidence,* p. 604, sec. 251 (2d ed. 1972).

While the defendant claims that the items containing such prior consistent statements were improperly admitted, he has not claimed such admission as a basis for reversal. Although it appears that the trial judge admitted these items under the exception to the hearsay rule for records of a regularly conducted activity, there is a question as to the admissibility of police reports or notebooks which incorporate the statements of eyewitnesses who do not testify at trial. *See Wisconsin Rules of Evidence,* 59 Wis.2d R. 270–71 (1974). Nevertheless, the defendant's objection is directed to those statements contained in these items which corroborate statements made at trial and thus, McCormick's observation should apply. Also, it cannot be said the verdict might have changed had such a limiting instruction been given.

Defendant contends that an instruction on the defense of involuntary intoxication should have been

given. As the discussion above relating to this defense and addiction indicates, however, there is no evidence to show that the defendant's intoxication or drugged condition was involuntary. A trial court is not required to give a requested instruction unless the evidence requires it. *Belohlavek v. State,* 34 Wis.2d 176, 179, 148 N.W.2d 665, 667 (1967).

■ The defendant's final objections relating to instructions are directed at the refusal of the trial judge to instruct the jury as to the lesser-included offenses of manslaughter resulting from excessive use of force in self-defense under sec. 940.05(2), Stats., and homicide by intoxicated use of a firearm under sec. 940.09, Stats. We find no reasonable ground in the evidence for conviction of the defendant on either of these charges, and thus, the trial judge was not required to submit them to the jury. *Ross v. State,* 61 Wis.2d 160, 169, 211 N.W.2d 827, 831 (1973).

There is no evidence that the defendant acted in self-defense. The only evidence which defendant claims supports this charge is the statement by Arredondo that just prior to the firing of the shotgun, the victim, who was walking toward the defendant, "did something with his hands." There was no explanation as to what Arredondo meant by this statement, and at no time did the defendant attempt to assert the defense of self-defense.

The crime of homicide by intoxicated use of a firearm requires negligence on the part of the defendant. No evidence whatsoever appears in the record that the defendant was negligent in firing the shotgun, and the defendant never asserted that he negligently pulled the trigger.

*Validity of Arrest*

The defendant contends that his statements to the police should have been suppressed because they were prod-

ucts of an unlawful arrest. The defendant was arrested by police without a warrant, and the question arises as to whether the arresting officer had probable cause for the arrest.

In *Leroux v. State,* 58 Wis.2d 671, 683–84, 207 N.W.2d 589, 595–96 (1973), this court made clear the rule that probable cause for arrest exists if the facts and circumstances known to the police officer and of which he has reasonably trustworthy information warrant a prudent man in believing an offense has been committed and that the defendant probably committed it. In determining whether probable cause existed for the arrest without warrant, the test is whether, on the basis of the information he had, the arresting officer could have obtained a warrant for the defendant's arrest. *State v. Paszek,* 50 Wis.2d 619, 627, 184 N.W.2d 836, 840–41 (1971).

The record here shows that the arresting officer, Detective Cole, had probable cause to arrest the defendant. He had the statement of the woman who lived in the immediate vicinity of the shooting that upon hearing shots she looked out her window and saw two young Mexican or Puerto Rican men run through the nearby parking lot and enter the home of the defendant. The defendant's sister told Detective Cole that about 12:30 a.m., which was shortly after the time of the shooting, her brother, the defendant, and Jose Arredondo ran into the home. Most important is the statement given to Cole by Pedro Garza just prior to the arrest at the Arredondo home. Garza told Cole that the defendant was hiding in the attic and had told Garza that he shot a man on Mitchell and 7th Streets the night before.

The defendant argues that the statement made by Garza was not sufficient to permit Cole to meet the requirements set forth in *Aguilar v. Texas,* 378 U.S. 108 (1964). In *Aguilar* the court considered the quantum of evidence which an officer must possess and present to

a magistrate in order to establish sufficient probable cause to authorize the issuance of a warrant based on hearsay information. The two pronged test of *Aguilar* requires that the officer must establish: "(1) the underlying circumstances from which he concludes that the informant is reliable; and (2) that the underlying circumstances or manner in which the informant obtained his information is reliable." *State v. Paszek, supra* at 627, 184 N.W.2d at 841. The defendant contends that Detective Cole could not have established circumstances from which he could conclude Garza was reliable.

The defendant's argument hinges upon the assertion that Garza may not be considered a "citizen informer" as recognized by this court in *State v. Paszek, supra.* Traditionally, the reliability of a police informer was determined by a showing that the informer had supplied reliable information to police in the past. In *Paszek,* however, the informer was merely a citizen who had witnessed criminal activity, and the court held that "a different rationale exists for establishing the reliability of named 'citizen-informers' as opposed to the traditional idea of unnamed police contacts and informers who usually themselves are criminals." *State v. Paszek, supra* at 630, 184 N.W.2d at 842.

The defendant claims Garza may not be considered a citizen informer because he has a criminal record. This claim, however, is not based upon a determinative distinction between citizen informers and traditional police informers. It is clear that the critical distinction between these types of informers is the expectation of some gain or concession in exchange for the information. In *Paszek* this court stated at 630–31, 184 N.W.2d at 843:

"However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to

criminal activity who acts with an intent to aid police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied."

The record reveals that Garza was not and never had been a police informer. He is not unnamed in this case. He witnessed a confession of this crime by the defendant and communicated the statement to police, not for consideration from the police, but merely to cooperate. He qualifies as a citizen informer.

The reliability of a citizen informer should be evaluated "from the nature of his report, his opportunity to see and hear matters reported, and the extent to which it can be verified by independent police investigation." *State v. Paszek, supra* at 631, 184 N.W.2d at 843. The search for reliability of a citizen informer is essentially shifted from the first prong of the *Aguilar* test, personal reliability, as in the case of police informers, to the second prong, "observational" reliability. *State v. Knudson,* 51 Wis.2d 270, 277, 187 N.W.2d 321, 325–26 (1971).

Observational reliability is the reliability of the underlying circumstances of the manner in which the person obtained the information. *Sanders v. State* (1975), 69 Wis.2d 242, 259, 230 N.W.2d 845, 855. Here Garza himself witnessed that which he communicated to Cole, a confession by the defendant. This court has held that direct personal observation attests to the reliability of the manner in which the citizen informer obtained his information. *Sanders v. State, supra.* "If a citizen informer is relied on by the police and is an eyewitness to the facts he relates to the complainant his reliability is sufficiently established." *Anderson v. State,* 66 Wis.2d 233, 242, 223 N.W.2d 879, 883 (1974). We think that the in-

formation obtained from Garza satisfied the test for reliability, and the arresting officer properly relied upon that information.

■ We conclude that the facts and circumstances known to Detective Cole would clearly warrant a prudent person in believing that the defendant committed this crime, and therefore the record evidences probable cause for arrest without a warrant. Defendant's statements to police were properly admitted into evidence.

*By the Court.*—Judgment and orders affirmed.