STATE OF Wisconsin, Plaintiff-Respondent,

v.

Gerald A. SCHULZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–942–CR.  Argued May 1, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 151.)

For the petitioner there were briefs and oral argument by *Steven D. Phillips,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. This is a review of a decision of the court of appeals which affirmed the judgment of conviction of the circuit court for Dane county: MICHAEL B. TORPHY, JR., Circuit Judge.

Gerald A. Schulz (defendant) was convicted of the crime of first-degree murder in violation of sec. 940.01, Stats. The issue in this review is the constitutional validity of the jury instructions given by the trial judge on the defense of voluntary intoxication.

On June 19, 1978, the defendant was charged with the June 3rd murder of Randall S. Quandt. A trial to a jury was conducted in December of that year.

At the trial the evidence demonstrated that the defendant was romantically involved with Susanne M. Liddle in early 1978. In May of 1978 she broke off the relationship, telling the defendant that she wanted to see other men. The defendant was very upset. The victim, Randall Quandt, was a person whom Sue Liddle associated with after ending her relationship with the defendant.

The record reflects that during the day of June 2, 1978 (particularly the night of June 2nd) and the early morning hours of June 3, 1978, the defendant visited several bars and drank intoxicants extensively. After the local taverns had closed on the morning of June 3rd, the defendant set out to locate Sue Liddle. He claims that he remembers nothing after this point in time. There was also considerable evidence by state witnesses that he did not seem to be intoxicated.

The testimony of witnesses at trial established that at about 3 a.m., the defendant found Ms. Liddle. She

was in the company of Randall Quandt. After a brief conversation in the parking lot of an apartment complex where Quandt and Liddle were attending a party, the defendant produced a gun and shot and killed the victim.

The major issue at the trial of this case was whether the defendant intended to kill Randall Quandt. The defense relied on Schulz's excessively intoxicated state as evidence of the nonexistence of a specific intent to kill.

At the close of the trial the judge instructed the jury on both first- and second-degree murder. The jury was also instructed on the matter of intoxication and the role it should play in its deliberative process. This instruction was given as follows:

"The defense of intoxication is an issue in this case. The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime.

"Ordinarily intoxication will not relieve a person from responsibility for his criminal act. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if at the time of the commission of the criminal act he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

"In this case the defendant is charged with the crime of first degree murder which one of the essential elements is intent to kill the Defendant and claims that, at the time of the outlined offense, his condition from the use of intoxicating beverages was such that he did not form such intent.

"To be relieved of responsibility for his actions it's not enough for the Defendant to establish that he was under the influence of intoxicating beverages. He must establish that the degree of intoxication—he must establish that—I'll start that over, again. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite on the commission of the crime charged.

"If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the Defendant

the benefit of that doubt and not find him guilty of first degree murder.

"Evidence has been received that a sample of the Defendant's blood was taken and evidence of analysis of such blood sample has been received. The law provides that the presence of one tenth of one percent or more by weight of alcohol in a person's blood, when coupled with corroborating physical evidence, is a sufficient evidence for finding that a person was under the influence of an intoxicant.

"You may consider this evidence along with all other evidence in this case in making your determination as to whether or not the defense of intoxication, as that defense has been instructed to you, has been met."

The jury found the defendant guilty of first-degree murder. Motions for a new trial were denied, and a judgment of conviction was entered.

The defendant appealed, claiming, *inter alia,* that the above-quoted jury instruction impermissibly shifted the burden of persuasion to him. In an unpublished opinion the court of appeals affirmed the conviction. The defendant's petition for review was subsequently granted.

The sole question presented by this review is whether the jury instructions given at the trial denied the defendant of his right to the due process of law.

It is argued before this court that the jury charge could have been interpreted by a reasonable juror as placing on the defendant the burden of persuading the jury that he lacked the specific intent to kill due to intoxication. Citing a line of cases beginning with *In re Winship,* 397 U.S. 358 (1970), and ending with the recent decision in *Sandstrom v. Montana,* 442 U.S. 510 (1979), the defendant claims that this instruction violated his right to due process. We agree.

The instruction of the jury is a crucial component of the fact-finding process. The jury as trier of fact is given the responsibility of making a determination of

guilt or guiltlessness in light of the jury charge, and the validity of that determination is dependent upon the correctness of the instructions which are given. When a jury charge is given in a manner such that a reasonable juror could have misinterpreted the instructions to the detriment of a defendant's due process rights, then the determination of the jury is tainted. This principle was set forth in *Sandstrom v. Montana, supra,* 442 U.S. at 514, and was recognized by this court in our decision in *Muller v. State,* 94 Wis.2d 450, 477–78, 289 N.W.2d 570 (1980). It is this rule which guides our discussion in this case.

As we have previously noted, it is axiomatic in the law that the state bears the burden of proving all elements of a crime beyond a reasonable doubt. *Id.* at 473; *In re Winship,* 397 U.S. 358 (1970). This burden of persuasion remains with the state throughout the trial, and as to any element the burden cannot be shifted to the defendant.

The leading United States Supreme Court cases which address the matter of shifting the burden of persuasion are *Mullaney v. Wilbur,* 421 U.S. 684 (1975) and *Patterson v. New York,* 432 U.S. 197 (1977).

In *Mullaney,* the defendant was charged with the murder of Claude Hebert. In a statement given to police, the defendant Wilbur said that his fatal attack on Hebert was the result of a state of frenzy provoked by the victim's homosexual advance. At trial the defendant offered no evidence, but counsel argued that, *inter alia,* Wilbur's act of homicide was manslaughter and not murder because Wilbur acted in the heat of passion. In light of the applicable state criminal law, Wilbur's jury was instructed that murder and manslaughter were two recognized kinds of felony homicide. Both murder and manslaughter required as elements of proof that the killing be intentional and without justification or excuse.

As compared with manslaughter, murder also required proof of "malice aforethought." The jury was instructed, however, that malice aforethought was to be conclusively implied if the prosecutor established the basic elements of felony homicide, *i.e.,* that the killing was intentional and without justification or excuse, *unless the defendant* proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation. The court found this placement of the burden of persuasion to be violative of the principles enunciated in the *Winship* decision. As explained in a later case, *Patterson v. New York, supra,* 432 U.S. at 215–16, the absence of provocation was identical with "malice aforethought" and was tantamount to an element of the crime of murder. Therefore the state could not place the burden of proof on the defendant as regards that "element."

The court was confronted with a similar situation in its decision in *Patterson v. New York,* 432 U.S. 197 (1977). In that case the defendant was also charged with murder. Under New York statutory law, the crime of murder involved proof of (1) an intent to cause the death of another, and (2) actual causation of the death. Manslaughter was defined under state law as the intentional killing of a person " 'under circumstances which do not constitute murder because [the defendant] acts under the influence of extreme emotional disturbance.' " The jury was instructed that the defendant had the burden of proving by a preponderance of the evidence that he acted under extreme emotional disturbance when he killed his victim. The United States Supreme Court held that the defendant was not denied his due process rights by virtue of having to assume the burden of persuasion as to the element of emotional disturbance. The court looked to the statutorily defined elements of murder and concluded that the evidence of extreme emotional dis-

turbance was not an element of the crime. The court wrote:

"This affirmative defense [of extreme emotional disturbance] . . . does not serve to negative any facts of the crime which the State is to prove in order to convict of murder. It constitutes a separate issue on which the defendant is required to carry the burden of persuasion; and unless we are to overturn *Leland* and *Rivera,* New York has not violated the Due Process Clause, and Patterson's conviction must be sustained." 432 U.S. at 206–07.

After the *Patterson* decision, a state may place a burden of proof on a defendant with respect to a question of fact provided that this affirmative defense "does not serve to negative any facts of the crime which the State is to prove in order to convict. . . ." *Id.* In the context of this case the question is whether the issue of intoxication is an affirmative defense or whether it is an attack on an element of the crime of murder. If it is the latter, then the state bears the burden of proving this element beyond a reasonable doubt.[1]

Sec. 939.42(2), Stats., provides that an intoxicated condition is a defense if such a condition "[n]egatives the existence of a state of mind essential to the crime." The "intent to kill" is an element of the crime of first-degree murder. When the defendant introduces evidence to demonstrate that, because of his intoxicated state, he did not intend to kill his victim, the accused seeks to negate a fact which the state must prove in order to convict the defendant of murder. This is the type of negative de-

---

[1] Although this case presents a rather clear application of the *Mullaney-Patterson* rule, the difficulty of determining which facts constitute elements of a crime which must be proven in order to convict has been noted. *See* Jeffries and Stephan, *Defenses, Presumptions, and Burden of Proof in the Criminal Law*, 88 Yale L.J. 1325 (1979).

fense which was contemplated by the decisions in *Mullaney* and *Patterson*. When such a defense is asserted, the burden of persuasion cannot be placed upon the defendant without violating his right to due process of law.

Although the accused may not be required to assume a burden of persuasion relative to his "defense" of intoxication, this is not to say that in every case the state must prove the absence of intoxication beyond a reasonable doubt. The principles of due process are not violated if a burden of production—as opposed to a burden of persuasion—is placed upon the accused to come forward with "some" evidence in rebuttal of the state's case. *See Muller v. State, supra,* 94 Wis.2d at 476–77. *See also Mullaney v. Wilbur, supra,* 421 U.S. at 701, n. 28. In order to place intoxication in issue in a given case, it will be necessary for the defendant to come forward with some evidence of his impaired condition. This evidence must be more than a mere statement that the defendant was intoxicated. The evidence must be credible and sufficient to warrant the jury's consideration of the issue as to whether the defendant was intoxicated to the extent it materially affected his or her ability to form the requisite intent. The test which the trial court must apply is whether, construing all the evidence produced most favorably to the defendant, a reasonable juror could conclude that the defendant's state of intoxication—in the words of the statute—"negative[d] the existence of a state of mind essential to the crime." Upon the production of such evidence the burden will be upon the state to prove beyond a reasonable doubt that the defendant's consumption of alcohol or drugs did not negate the existence of a state of mind necessary to fix criminal liability. In his discretion, the prosecutor may elect to provide additional evidence in rebuttal of the defense or the

prosecutor may choose to stand on the basis of the proof he submitted in the case-in-chief.

Having concluded that the defense of intoxication is a "negative defense" which attacks an element of crime charged in a murder prosecution, we must consider whether the jury instructions given in this case adequately set forth the burden of persuasion on the issue of intoxication. We hold that a reasonable juror could have misunderstood the allocation of the burden of proof. Therefore we conclude that the jury instructions were tainted and this taint impaired the integrity of the jury determination.

The taint of the instruction is important in this case because intoxication was the major, if not the only, defense the defendant had to the charge of first-degree murder. He does not contest the fact that he shot and killed the deceased. He does not dispute that he is guilty of some degree of criminal homicide. His claim is that he was intoxicated to the degree that he was unable to form the requisite intent to warrant a conviction of first-degree murder.

The jury charge relating to intoxication was not the standard instruction.[2] At the request of the prosecutor, a paragraph was added. That paragraph provided:

---

[2] Wis JI—Criminal, Part I, 765, as it applies to this case, would have read as follows:

The defense of intoxication is an issue in this case.

The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime.

Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if, at the time of the commission of the alleged criminal act, he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

> "To be relieved of responsibility for his action, it is not enough for a *defendant to establish* that he was under the influence of intoxicating beverages. *He must establish* that degree of intoxication that means he was *utterly incapable of forming the intent* requisite to the commission of the crime charged." (Emphasis supplied.)

During the course of the instructions, the record reflects that the judge had difficulty reading this instruction. As a result, the trial judge repeated the phrase "he must establish" three times while reading the single paragraph quoted above.

Shortly after reading this language to the jury the judge concluded his instruction on intoxication with the following direction: .

> "You may consider this evidence along with all other evidence in this case in making your determination as to whether or not the *defense of intoxication . . . has been met.*"

The state argues that these instructions did not constitute constitutional error because they merely instructed the jury that the defendant had a burden of production and not persuasion. It is also argued that the jury charge is an accurate statement of the law which has

---

In this case, defendant is charged with the crime of first-degree murder of which one of the essential elements is the intent to kill. The defendant claims that, at the time of the alleged offense, his condition from the use of intoxicating liquor was such that he did not form such intent.

If the defendant, because of his condition, was incapable of forming and, therefore, did not form the intent to kill, then you must not find him guilty of first-degree murder as charged in the information.

If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first-degree murder.

The issues presented by this review would not have arisen if this standard instruction had been used without modification.

been previously approved in *State v. Johnnies,* 76 Wis.2d 578, 251 N.W.2d 807 (1977).

We do not read the above-quoted passages as merely informing the jury of the defendant's burden of production. The language easily could have led a reasonable juror to conclude that before a verdict of not guilty of first-degree murder could be returned, *the defendant* had to convince him or her that a reasonable doubt existed regarding the defendant's intent to kill. This is clearly not the law. If, upon a consideration of all the evidence, a finder of fact is waivering between a finding of guilty or not guilty, the risk of non-persuasion must be borne by the state, and any indecision must be resolved in favor of the defendant.

We consider to be improper the suggestion to the jury that the defendant had to "establish" that he was "utterly incapable" of forming the intent to kill and that the jury's job was to decide whether this defense had been met. On balance, this language overshadowed the proper instruction to the effect that the defendant must be given the benefit of any reasonable doubt.

It cannot be denied that much of the language used by the trial judge in the revised instruction has been a part of the law of the criminal defense of intoxication. It may be traced to the court's opinion in *State v. Guiden,* 46 Wis.2d 328, 331, 174 N.W.2d 488 (1970), wherein Justice ROBERT W. HANSEN wrote:

"The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxica-

tion that means he was utterly incapable of forming the intent requisite to the commission of the crime charged."

This portion of the *Guiden* opinion has been cited in a series of leading cases on the defense of intoxication in the past.[3]

The language of the *Guiden* opinion may well be an accurate reflection of the state of the law as it relates to an appellate determination of sufficiency of the evidence[4] or to a trial court's decision to instruct a jury on intoxication in the first instance.[5] We hold, however, that such language has no place in the instruction of a jury on the issue of intoxication because of its tendency to lead a reasonable juror to misinterpret the proper allocation of the burden of persuasion in a criminal case.

The decision in the case of *State v. Johnnies*, 76 Wis.2d 578, 251 N.W.2d 807 (1977), is not precedent which controls the issue presented by this case. In *Johnnies*, the claim was made that the use of the *Guiden* language (specifically the term "complete drunkenness") in the context of a jury instruction misstated the law of intoxication as set forth in sec. 939.42(2), Stats. 76 Wis.2d at 585. It was held that the instruction was not an incorrect statement of the law. The *Johnnies Case* is not authority for the proposition that the *Guiden* language passes the scrutiny required under the *Mullaney-Patterson* rule dealing with the burden of persuasion.

It has been suggested that any error in the giving of the instructions was harmless.[6] We have reviewed the

---

[3] *See, e.g., Larson v. State*, 86 Wis.2d 187, 195, 271 N.W.2d 647 (1978); *Staples v. State*, 74 Wis.2d 13, 21, 245 N.W.2d 679 (1976); *Jones v. State*, 69 Wis.2d 337, 346, 230 N.W.2d 677 (1975); *State v. Nemoir*, 62 Wis.2d 206, 211, 214 N.W.2d 297 (1974).

[4] *See, e.g., State v. Nemoir*, n. 3 at 210.

[5] *See, e.g., Larson v. State*, n. 3 at 196–97; *Jones v. State*, n. 3 at 345–46.

[6] We note that there remains a substantial question as to whether an instruction which runs afoul of constitutional limitations can

jury instructions and we note that this is not a case where a single sentence or phrase lent itself to an impermissible interpretation which was counterbalanced by a set of jury instructions which, when read as a whole, accurately stated the law. Substantial portions of the jury instruction on intoxication were susceptible to misinterpretation. Moreover, the primary issue at trial was the intent of the defendant. In light of these considerations, it must be concluded that the error was not harmless.

As a final argument, the state claims that the defendant failed to properly object to the jury instructions and therefore this court should not provide relief for Schulz in the absence of a showing that the error affected his substantial rights.[7] The instruction as given in this case misallocated the burden of persuasion and jeopardized the integrity of the jury determination. The defendant's substantial rights were affected. The waiver rule should not be applied to prevent our consideration of the issue.

The verdict of the jury has its foundation in the instructions which are given at the close of the trial. Although there may be many cases where a simple misstatement of the law will—for one reason or another—be insufficient to disturb a judgment of conviction on appeal, such a situation is not presented by the instant case. The jury instructions used in the defendant's trial could reasonably have been understood by the jury as placing upon the defendant the burden of proving that he did not intend to kill his victim. This was a violation of the defendant's fundamental right to a presumption of inno-

---

ever be harmless. *Sandstrom v. Montana, supra,* 422 U.S. at 526–27.

[7] The state does not argue that the defendant has waived his right to challenge the impropriety of the jury instruction. At oral argument the state indicated that its position was that the defendant should not be granted relief unless his substantial rights were affected.

cence and to have the state prove beyond a reasonable doubt every essential element of the crime of murder. For these reasons the defendant's judgment of conviction cannot stand, and a new trial must be ordered.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for a new trial.

WILLIAM G. CALLOW, J. (*dissenting*). The majority concludes that a reasonable juror might have misunderstood the allocation of the burden of persuasion with respect to the issue of the defendant's intoxication, and thus "the jury instructions were tainted and this taint impaired the integrity of the jury determination." Majority opinion at 431. Because I do not believe a reasonable juror could have understood the challenged instruction to place upon the defendant the burden of proof with respect to the element of intent, and for other reasons hereinafter discussed, I respectfully dissent.

As the first step in its analysis, the majority concludes that this case offers a clear-cut example of the problem dealt with in *Mullaney v. Wilbur*, 421 U.S. 684 (1975). In that case the relevant Maine statutes recognized two kinds of felony homicide—murder and manslaughter. Although both kinds of homicide shared the common features of being unlawful and intentional, murder also included the element of "malice aforethought," while manslaughter required that the killing have been done "in the heat of passion on sudden provocation." The jury was instructed on two kinds of homicide and was specifically instructed "that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden

provocation." 421 U.S. at 686. Reasoning that heat of passion on sudden provocation was, in effect, the "negative" of malice aforethought, the court held that the instruction "affirmatively shifted the burden of proof to the defendant." *Id.* at 701.

Despite the fact that in this case we are dealing with "negative defense," *see,* majority opinion at 429, I do not find the same affirmative shift in the burden of proof here as occurred in *Mullaney.* The jury in *Mullaney* was told that the state need prove two things—that the killing was unlawful and intentional. It is clear that those two elements were also a part of the crime of manslaughter. However, once those two elements were established by the state, the next step in the prosecution (and the one which determined whether the conviction would be for murder or manslaughter) fell squarely on the defendant. Unless the defendant proved that he had acted in the heat of passion on sudden provocation, a third element of the crime of murder—malice aforethought—would be conclusively implied. In other words, once the state proved up a basic case of felony homicide, it was presumed to be murder unless the defendant proved it was not. Such a jury charge sounds too much like the accusatorial rule by which a man is guilty until proven innocent, and it is no wonder the United States Supreme Court found it violative of the fundamental due process notions articulated in *In Re Winship,* 397 U.S. 358 (1970).

In contrast, in this case the state was not relieved of its burden of proving the *presence* of the element implicated by the intoxication defense—intent. The jury was instructed repeatedly that the state had to prove every element of the crime beyond a reasonable doubt, and intent was defined as an element of the crime. Moreover, a review of the record of the state's case indicates

that a significant portion of it was directed toward establishing the presence of the element of intent. In my view this case is not a *Mullaney* situation at all. At no point during the prosecution was the defendant burdened with the task of proving the nonexistence of an element, the presence of which was automatically and conclusively implied if he failed. And even if the challenged instruction in this case were taken to mean that the defendant must prove something or make some sort of showing (an assumption I make for argument only), it surely does not come close to placing with the defendant the "risk of nonpersuasion," to use the majority's term, since his ultimate guilt did not depend directly upon his success or failure. It depended upon the state proving the existence of intent beyond a reasonable doubt.

To say the challenged instruction does not run afoul of *Mullaney* is not, however, to say it is necessarily constitutionally permissible. As the majority correctly points out, the test is how the instruction could be understood by a reasonable juror. *Sandstrom v. Montana,* 442 U.S. 510 (1979). The majority concludes that the phrase "he must establish," repeated three times[1] in the space of one sentence, in close proximity to the words "utterly incapable of forming the intent," "easily could have led a reasonable juror to conclude that before a verdict of not guilty of first-degree murder could be returned, *the defendant* had to convince him or her that a reasonable doubt existed regarding the defendant's intent to kill. (Emphasis added.)" Majority Opinion at 433. I disagree.

The potential effect or impact of a jury instruction upon the deliberative process must be gauged by viewing the jury instructions in their entirety. *Moes v. State,* 91

[1] The record reveals the judge stumbled in reading the instruction and, recognizing this, told the jury he would start over again. That the stumbling resulted in the comment being repeated three times does not convince me that the jury might perceive this as emphasis.

Wis.2d 756, 768, 284 N.W.2d 66 (1979) ; *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973). The majority, in apparent adherence to this principle, states at pages 434–435 :

"We have reviewed the jury instructions and we note that this is not a case where a single sentence or phrase lent itself to an impermissible interpretation which was counterbalanced by a set of jury instructions which, when read as a whole, accurately stated the law."

My review of the complete instructions given by the trial judge in this case leads me to believe otherwise.

The trial judge read twenty-four pattern instructions and two special instructions requested by counsel, both of which related to intoxication. *Prior* to giving the challenged instruction, the jury was instructed on the elements of first-degree murder in part as follows :

"Before the Defendant may be found guilty of murder in the first degree, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense. First, that the Defendant intended to kill Randall Quandt, and second, that the Defendant caused the death of Randall Quandt."

Following that instruction and an extended instruction on what is meant by intent, the jury was instructed that :

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the Defendant did commit an act of shooting which caused the death of Randall Quandt at the time and place charged in the Information, and that at any time before doing such act the Defendant had formed in his mind the purpose to take the life of Randall Quandt and that the act of shooting was done by the Defendant in pursuance of such mental purpose, then you should find the Defendant guilty of murder in the first degree as charged in the Information.

"If, however, you are not so satisfied, then you must find the Defendant not guilty of murder in the first degree. . . ."

Following instruction on the lesser included offense of second-degree murder, the jury was again instructed:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the Defendant committed first degree murder, . . . you should find him guilty of that offense. . . ."

*After* the trial judge read the challenged instruction on intoxication, the jury was instructed as follows:

"In determining the guilt or innocence of the Defendant you should scrutinize the evidence with the utmost care and caution. You should act with all the judgment, reason, prudence and discrimination you possess. If, after this scrutiny of all the evidence, you have a reasonable doubt of the Defendant's guilt, you must find him not guilty.

"The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

"The burden of proving the Defendant guilty of every element of the crime charged is upon the State. Before you can return a verdict of guilty, you must be satisfied beyond a reasonable doubt that the Defendant is guilty of the crime charged.

"If you can reconcile the evidence upon any reasonable hypothesis consistent with the Defendant's innocence, you should do so and find him not guilty."

After being so instructed, could a reasonable juror believe the defendant was required to prove anything? I think not. A recent survey confirms what some jurists have suspected for a long time—that jury instructions have a modest impact on juries because jurors do not comprehend the nuances and directions contained in the instructions. Jurors are citizens selected for temporary duty as fact finders in contested legal matters. I do not

know any definition of the proverbial "reasonable juror," but I accept the proposition that the reasonable juror is one who comes to jury duty knowing that a defendant is presumed innocent until proven guilty beyond a reasonable doubt by competent evidence. I believe it equally reasonable to assume that, when jurors have accepted the jurors' oath after voir dire examination and when they are repeatedly instructed on the matter of burden of proof, they collectively comprehend from the maze of instruction the principal theme that the defendant does not have to prove his innocence, and the state does have to prove every element of the offense beyond a reasonable doubt by competent evidence before the jury can convict the defendant of any crime.

I believe this case is distinguishable from *Sandstrom.* In *Sandstrom* the court rejected the argument that the general instructions on the burden of proof or the presumption of innocence neutralized an instruction that " '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' " 442 U.S. at 513. The court concluded the erroneous instruction was not cured by the other instructions because a reasonable juror could have believed the normal presumption of innocence and burden of proof could be effectuated by operation of the challenged instruction, that is, a reasonable juror could have believed that the state could prove its case and overcome the presumption of innocence by the application of the challenged presumption. We are not dealing with a presumption that could be viewed as an aid or shortcut to proof, as was the case in *Sandstrom.* The totality of the instructions here clearly and unmistakably allocate the burden of proof, as well as the risk of nonpersuasion, upon the state, and for that reason I do not find the instruction constitutionally infirm, and I would affirm the court of appeals.

I am also troubled by the language of the majority opinion at page 430, stating that, once the defendant has come forward with some evidence of intoxication, "the burden will be upon the state to prove beyond a reasonable doubt that the defendant's consumption of alcohol or drugs did not negate the existence of a state of mind necessary to fix criminal liability." The majority then states: "In his discretion, the prosecutor may elect to provide additional evidence in rebuttal of the defense or the prosecutor may choose to stand on the basis of the proof he submitted in the case-in-chief." This suggests that the majority recognizes the state does not assume some additional or greater burden when the defendant has raised the issue of intoxication. But this language does not go far enough.

The state's burden to prove that a defendant's state of mind was not negated by alcohol consumption inheres in its general burden to prove intent. I fear that now each time intoxication is an issue defense counsel will be clamoring to have a special instruction submitted to the effect that the state must prove beyond a reasonable doubt that the defendant was not so intoxicated as to be incapable to forming the requisite intent. I hope trial judges resist these urgings, inasmuch as I do not feel that such an instruction is proper. It is elementary that to prove a thing exists one must in effect disprove its nonexistence. Thus when a jury is instructed that the state must prove intent beyond a reasonable doubt, it means there must be no reasonable doubt arising from the defendant's intoxication or any other intent-negating factor.

This is not a case like *Moes* where we held the state was required to disprove, beyond a reasonable doubt, the existence of the statutory defense of coercion. Lack of coercion is not an element of first-degree murder, and

thus the basic instruction that the state is required to prove every element beyond a reasonable doubt does not logically subsume or incorporate its burden relative to that statutory defense. But where the issue is merely the negative or nonexistence of an element of the crime, as it is with intoxication, to first instruct on the state's burden with respect to the elements of the crime and then to instruct on the state's burden as to the nonexistence of an alcohol or drug induced negation of these elements is not only redundant but also, I believe, impermissibly intrusive into the discretion of the state to prosecute its case.

This case leads me to question the need for or wisdom of granting a statutory defense to an element of the crime. Clearly, without the statute the defendant is entitled to offer any evidence that relates to his ability to form an intent. The state, in meeting its obligation to prove intent, must overcome any factor, including intoxication, which tends to negate its existence.

My disenchantment with the statutory defense extends to the text of Wis JI—Criminal 765. If a trial judge, using the test set forth at page 430 of the majority opinion, decides an intoxication instruction is warranted, the jury need only be advised that in considering whether the defendant possessed the requisite intent to commit the crime, although intoxication alone does not relieve one of criminal responsibility, the fact that the defendant may have been intoxicated should be taken into account. Instruction 765 is unnecessarily extensive, and in view of its susceptibility to challenge, I believe it should be changed. I urge the legislature to eliminate sec. 939.42 (2), Stats., and the Criminal Jury Instruction Committee to revise Wis JI—Criminal 765.

Because I do not believe that the jury in this case, or any reasonable jury, could have believed that the burden

of persuasion with respect to the element of intent had been shifted to the defendant, I would affirm the conviction and the decision of the court of appeals.

COFFEY, J. (*dissenting*). I agree with Justice Callow's dissenting opinion in part. I write separately, however, to express my disagreement with the focus of both his dissent and the majority opinion, and to express my dissatisfaction with the failure to relate the instruction given to the facts of record.

In *Moes v. State,* 91 Wis.2d 756, 284 N.W.2d 66 (1979), we held that no defense included in the criminal code could operate so as to place the burden of proof on the defendant, notwithstanding that it was constitutionally permissible under *Patterson v. New York,* 432 U.S. 197 (1977), to place the burden of proof on the defendant when the defense is not sufficiently connected with an element of the crime so as to relieve the state of its burden of proving each and every element of the crime beyond a reasonable doubt. We said, in an opinion authored by Justice Callow:

"The Wisconsin jury instructions recognize this burden [that the state must disprove statutory defenses which have been raised] and provide that, if the defendant introduces evidence to establish a statutory defense to criminal liability, the defendant must be found not guilty unless the jury is convinced beyond a reasonable doubt of the guilt of the defendant notwithstanding the proper defense. (footnotes omitted.)" 91 Wis.2d 756, 765, 284 N.W.2d 66 (1979).

There is no federal constitutional question presented in this case. If, by modifying the standard instruction on intoxication so as to state that the defendant had to "establish" the defense of intoxication, the trial judge thereby shifted the burden of persuasion to the defendant, there was a violation of sec. 939.70, Stats., which pro-

vides: "No provision of chs. 939 to 948 shall be construed as changing the existing law with respect to presumption of innocence or burden of proof." As construed in *Moes, supra,* this statute requires the state to disprove beyond a reasonable doubt the statutory defense of intoxication once evidence has been introduced to "establish" it. The question is whether the jury might have misunderstood and misapplied the instruction so as to relieve the state of its burden of disproving the defendant's defense of intoxication. Under the facts of this case, I see no possibility that the jury did so.

The only evidence as to the extent of the defendant's intoxication was his testimony that he remembered nothing after he set out to find Sue Liddle on the morning of June 3rd. If the jury had believed the defendant, it would have been required to acquit him under the instruction given, including the language that, "If you have any reasonable doubt as to whether or not he was not intoxicated, you must give the defendant the benefit of that doubt and not find him guilty of first degree murder."

No reasonable juror could have interpreted the foregoing statement as meaning that the defendant had the burden of proving the requisite degree of intoxication beyond a reasonable doubt. As the dissent points out, the jury was repeatedly instructed that beyond a reasonable doubt was the measure of the state's burden of proof. The only reasonable interpretation is that if the jury had a reasonable doubt as to the degree of the defendant's intoxication, it must give him that benefit of doubt and find him not guilty.

As presented to the jury, this case involved only an issue as to the defendant's credibility. If he had testified that even though he caused the death of Randall Quandt, he did not intend to do so, essentially the same credibility

issue would have arisen. No issue is taken with the adequacy of the instructions on the jury's duty to determine credibility.

The majority sees the need to establish rules to guide the trial judge in the determination as to what evidence is necessary to place intoxication at issue. If this is intended to be any more than an application of the familiar rule that the judge is required to give only those instructions which are warranted by the evidence, I disagree. The determination of credibility is a function of the jury as the trier of fact, not the judge, unless the testimony is in complete contradiction to the undisputed physical facts. Judges should be very careful not to refuse instructions merely because the evidence supporting them is improbable. The proper test is whether the supporting evidence is relevant and appreciable. *Hawthorne v. State,* 99 Wis.2d 673, 299 N.W.2d 866 (1981). The voluntary intoxication instruction is to be given if the evidence viewed in a light most favorable to the accused permits the inference that he did not intend his acts. *State v. Verhasselt,* 83 Wis.2d 647, 266 N.W.2d 342 (1978).

I also disagree with the dissent when it says that the defense of voluntary intoxication should be removed from the statutes and when it criticizes the standard instruction on voluntary intoxication. Long before the enactment of sec. 939.42(2), Stats., as sec. 339.42(2) of the 1955 Criminal Code, our cases recognized voluntary intoxication as a defense to first degree murder, if the defendant was thereby rendered incapable of forming a design to kill. *See: Hempton v. State,* 111 Wis. 127, 86 N.W. 596 (1901). Repealing the statute would have no effect on the common law rule which it codifies.

I do not agree that the instruction on voluntary intoxication, Wis JI—Criminal, sec. 765, is longer than necessary because it must be complete in order for the jury

to properly weigh and analyze the issue. Neither is the instruction susceptible to challenge. If it had been given without change in the case at bar, it would not have reached this court. The substitute proposal, that intoxication alone does not relieve one of criminal responsibility, but should be taken into account in considering intent, is not a correct statement of the law. The jury is not to take the intoxication of the defendant into account unless it determines that the degree of intoxication casts a reasonable doubt on the defendant's intent. The jury was so instructed, and the instruction was not erroneous as applied to the facts of this case, which raised only the issue of the credibility of the defendant's claim that he was so intoxicated that he was unable to remember the incident.

For the foregoing reasons, I would affirm the decision of the court of appeals affirming the judgment of conviction for first-degree murder.

STEINMETZ, J. (*dissenting*). I do not believe that the jury in this case, or any reasonable jury, could have believed that the burden of persuasion with respect to the element of intent had been shifted to the defendant.

This jury was instructed repeatedly that the state had to prove every element of the crime beyond a reasonable doubt, and intent was defined as an element of the crime.

The potential effect or impact of a jury instruction upon the deliberative process must be gauged by viewing the jury instructions in their entirety. *Moes v. State,* 91 Wis.2d 756, 768, 284 N.W.2d 66 (1979); *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973).

The defendant's allegation of his state of mind due to alcohol consumption is just one factor, along with all other factors, in the case for the jury to consider in deter-

mining whether the state has met its burden of proof in proving the defendant's intent.

I would affirm the conviction and the decision of the court of appeals.