Edward BARRERA, a/k/a Eduardo Barrera,
Plaintiff in Error,

v.

STATE of Wisconsin, Defendant in Error-Petitioner.

Supreme Court

*No. 79–1574–CR.  Argued September 9, 1982.—Decided November 2, 1982.*

(Also reported in 325 N.W.2d 722.)

For the defendant in error-petitioner the cause was argued by *Michael Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the plaintiff in error there was a brief and oral argument by *Michael Yovovich,* first assistant state public defender.

LOUIS J. CECI, J.   A jury convicted the defendant of first-degree murder and armed robbery, as a party to a crime, in violation of secs. 940.01, 943.32 and 939.05, Stats. 1975. The court of appeals reversed his judgments of conviction, and the state has appealed.

The issue presented is whether the jury instructions given by the trial judge on the defense of voluntary intoxication are valid in light of *State v. Schulz,* 102 Wis. 2d 423, 307 N.W.2d 151 (1981). Because we conclude that the instructions, viewed in their entirety, do not impermissibly shift the burden of persuasion to the defendant, we reverse the decision of the court of appeals.

Evidence was introduced that on October 14, 1976, the evening before the alleged crimes occurred, the defendant, his brother, Reyes Barrera, and Frederico Garcia had been drinking beer and smoking marijuana, and the defendant had consumed some five-milligram Valium tablets. The defendant testified that the next day, October 15, 1976, he awoke at about 8:30 a.m.  He testified, "I had aten [sic] some Valium and I imagine I drank some beer to down these Valiums down." He testified that he *may* have consumed a half bottle of wine later that morning.

Frederico Garcia disputes that they had anything to drink that morning.

Later that morning the three men drove to a liquor store in Beaver Dam, where Frederico Garcia stole a bottle of wine. Either Reyes or Frederico then stole some shotgun shells at another store. They then test-fired a shotgun in the countryside near Beaver Dam. The three men returned to the liquor store shortly before noon. Reyes Barrera entered the store with the shotgun while Frederico Garcia and the defendant remained in the car. Reyes robbed the proprietor and shot and killed her. The men then drove to Texas.

The defendant testified that he was in the back seat of the automobile when the robbery occurred and that he had no recollection of anyone going in or coming out of the liquor store. The testimony of Frederico Garcia unequivocally states that the defendant was seated next to him in the front seat while Reyes went in to commit the robbery and murder. The defendant stated that the Valium and wine had made him intoxicated and sleepy. He testified that he first learned of the robbery when the three men arrived in Texas.

At the conclusion of the case, the trial court instructed the jury on armed robbery, party to a crime, first-degree murder, party to a crime and the lesser-included defense of third-degree murder. The court also gave the following intoxication instruction:

"The *defense* of intoxication or a drug condition is an issue in this case. The Criminal Code of Wisconsin provides that an intoxicated condition or a drug condition *is a defense* if such condition negatives the existence of a state of mind essential to the crime. Ordinarily, intoxication or a drug condition will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if at the time of the commission of the alleged criminal act he was so intoxi-

cated or drugged that he was unable to form the essential intent or have the essential mental state.

"In this case, the defendant is charged with the crimes of intentionally aiding and abetting the commission of murder in the first degree and armed robbery. One of the essential elements of intentional aiding and abetting the commission of a crime is knowledge or belief on the part of the aider and abettor that another person is committing or intends to commit a crime. An additional element of intentionally aiding and abetting the commission of a crime is that the aider and abettor knowingly either renders aid to the person who commits the crime or is ready and willing to render aid if needed, and the person who commits the crime knows of his willingness to aid him.

"The *defendant claims* that at the time of the alleged offenses the condition from the use of intoxicating liquor and drugs was such that he had no knowledge that another person was committing or intended to commit a crime. The defendant *further claims* at the time of the alleged offenses his condition from the use of intoxicating liquor and drugs was such that if any crimes were committed at all and any aid was rendered by the defendant to the person who committed the crimes at all, the defendant did not render such aid knowingly. If the defendant, because of his condition, had no knowledge that another person was committing or intended to commit a crime, then you must not find him guilty of intentionally aiding and abetting the commission of the crime of murder in the first degree or armed robbery as charged in the information. If the defendant, because of his condition, had no knowledge that he was rendering aid to the person who committed the crimes, assuming such crimes to have occurred, and aid to have been rendered on behalf of the person who committed those crimes by the defendant, then you must find him not guilty of intentionally aiding and abetting the commission of the crimes of murder in the first degree and armed robbery as charged in the information. The intoxicated or drug condition to which the statute refers is not the condition of alcohol induced condition that lowers the threshold of inhibitions. *It is that degree of complete drunkenness or intoxication which makes a person incapable of forming intent* to perform an act or commit a crime. To be relieved of respon-

sibility for criminal acts it is not enough *for a defendant* to establish that he was under the influence of intoxicating beverages. *He must establish that degree of intoxication that means he was incapable of forming the intent* requisite to the commission of the crime charged or of knowing what was occurring about him. His intent is a state of mind existing at the time of the commission of the offenses if any such offenses have been shown to exist, and his state of mind may be determined from his acts, his conduct, his own self-description of his state of sobriety, and from inferences fairly drawn from all of the circumstances as shown by all of the evidence in the case.

*"If you have a reasonable doubt as to whether or not the defendant was so intoxicated or drugged,* you must give the defendant the benefit of that doubt and find him not guilty of intentionally aiding and abetting the commission of the crimes of murder in the first degree and armed robbery."[1] (Emphasis added.)

The jury was also given general instructions on the state's burden of proof:

"The burden of proving the defendant guilty of every element of the crime charged is upon the state. Before you can return a verdict of guilty, the state must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

"If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty."

The defendant was convicted of first-degree murder and armed robbery, as a party to a crime. Post-trial motions were filed and denied, and a judgment of conviction was entered.

The defendant appealed. He argued, *inter alia,* that the italicized portions of the above-quoted instruction shifted

---

[1] This jury charge was not the standard instruction. The standard instruction, Wis. JI—Criminal, Part 1, 765, is nearly identical to the charge that was given, except it does not contain the *Guiden* language.

the burden of persuasion on the issues of intent and knowledge to him, thereby depriving him of his right to due process of law. The court of appeals, relying on *State v. Schulz,* 102 Wis. 2d 423, 307 N.W.2d 151 (1981), concluded that the jury could have been misled as to who had the burden of persuasion on the element of intent.

The determinative question in the case before us is whether the trial court's instruction to the jury on intoxication, together with all other instructions, viewed in their entirety, made it clear that the burden of persuasion on the issue of intent remained on the state. The state bears the burden of proving all elements of a crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358 (1970) ; *Muller v. State,* 94 Wis. 2d 450, 289 N.W.2d 570 (1980). Language in a jury instruction that relieves the state of its duty to prove the element of intent beyond a reasonable doubt denies the defendant due process. 94 Wis. 2d at 473–74. The standard is whether a *reasonable* juror could have interpreted the instruction as shifting the burden of persuasion on an element of the offense to the defendant. *Id.* at 477–78; *Sandstrom v. Montana,* 442 U.S. 510 (1979).

Under Wisconsin law, voluntary intoxication is a defense if the condition "[n]egatives the existence of a state of mind essential to the crime."[2] Since intent or knowledge is an element of the crimes of which the defendant was convicted, his intoxicated condition is a negative, rather than an affirmative, defense. Therefore, the state may only require the defendant to come forward with "some" evidence in rebuttal of the state's case. *State v. Schulz,* 102 Wis. 2d at 430.

---

[2] Section 939.42(2), Stats.

It was inappropriate to read the *"Guiden* language" as part of the charge to the jury.[3] The defendant contends that the inclusion of this language, which was part of the basis for reversal in *Schulz,* sufficiently taints the jury instruction in the instant case, so as to require a new trial on due process grounds. We disagree, finding the following rule from *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973), to be applicable in this case:[4]

"In determining the effect of this instruction on the validity of respondent's conviction, *we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.*

---

[3] In *State v. Guiden,* 46 Wis. 2d 328, 331, 174 N.W.2d 488 (1970), the majority opinion stated:

"The 'intoxicated or drugged condition' to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts it is not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged."

As we noted in *State v. Schulz,* 102 Wis. 2d 423, 434 (1981), this language has no place in the instruction of a jury on the issue of intoxication, although it may well be a proper statement of the law for other purposes.

[4] In *Cupp v. Naughten,* 414 U.S. 141, 142 (1973), the trial judge had instructed that the defendant was presumed innocent "until guilt is proved beyond a reasonable doubt." He also gave the following instruction, which was arguably improper:

" 'Every witness is presumed to speak the truth. This presumption may be overcome by the manner in which the witness testifies, by the nature of his or her testimony, by evidence affecting his or her character, interest, or motives, by contradictory evidence, or by a presumption.' "

*Boyd v. United States,* 271 U.S. 104, 107 (1926). While this does not mean that an instruction by itself may never rise to the level of constitutional error, see *Cool v. United States,* 409 U.S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

"The Court of Appeals in this case stated that the effect of the instruction was to place the burden on respondent to prove his innocence. But the trial court gave, not once but twice, explicit instructions affirming the presumption of innocence and declaring the obligation of the State to prove guilt beyond a reasonable doubt. The Court of Appeals, recognizing that these other instructions had been given, nevertheless declared that 'there was no instruction so specifically directed to that under attack as can be said to have effected a cure.' 476 F.2d, at 847. But we believe this analysis puts the cart before the horse; the question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (Emphasis added.)

At the defendant's trial, the correct rule as to the state's burden of proving every element beyond a reasonable doubt was stated several times. We believe that a reasonable juror would not have been misled regarding the burden of persuasion on the issue of intent.[5]

---

[5] We find that the *Guiden* language was the only objectionable part of the instruction. The defendant also argues that the inclusion of other language in the charge to the jury was error, especially when considered along with the *Guiden* language. We reject his contention that it was improper to use words such as "defendant *claims*" and "*defense* of intoxication."

Moreover, the instructional error in this case is less egregious than the errors in *Schulz*. The charge to the jury in *Schulz* read in pertinent part:

"To be relieved of responsibility for his actions it's not enough for the Defendant to establish that he was under the influence of intoxicating beverages. *He must establish that the degree of intoxication—he must establish that—I'll start that over, again. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite on the commission of the crime charged.*

"If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the Defendant the benefit of that doubt and not find him guilty of first degree murder.

"Evidence has been received that a sample of the Defendant's blood was taken and evidence of analysis of such blood sample has been received. The law provides that the presence of one tenth of one percent or more by weight of alcohol in a person's blood, when coupled with corroborating physical evidence, is a sufficient evidence for finding that a person was under the influence of an intoxicant.

*"You may consider this evidence along with all other evidence in this case in making your determination as to whether or not the defense of intoxication, as that defense has been instructed to you, has been met."* (Emphasis added; 102 Wis. 2d 425–26.)

Unlike *Schulz*, the intoxication instruction in this case contained a final admonition which clearly described the state's burden of proving the element of intent. The instruction in *Schulz* also included the "reasonable doubt" language; however, it was not a part of the final admonition to the jury. The final intoxication instruction in *Schulz* stated that the jury "may consider this evidence along with all other evidence" in determining whether the "defense of intoxication . . . *has been met.*" 102 Wis. 2d at 426. (Emphasis added.) We feel that the addition of this final paragraph might confuse a reasonable juror.

However, this instruction was not given at Barrera's trial. In addition, unlike *Schulz,* the trial judge in this case did not inform the jury that the defendant had to be *"utterly* incapable" of forming the requisite intent. The word "utterly," while possibly superfluous, might serve to emphasize any perceived burden on the part of a defendant.

We stated in *Schulz:*

"[T]his is not a case where a single sentence or phrase lent itself to an impermissible interpretation which was counterbalanced by a set of jury instructions which, when read as a whole, accurately stated the law." *Id.* at 435.

In *Schulz,* we found a combination of defects in the jury instruction to be grounds for reversal. In the case before us, the error was not compounded as it was in *Schulz;* rather, it was limited to a single sentence.

Thus, we conclude that the instructions, viewed as a whole, did not impermissibly shift the burden of persuasion on the issue of intent to the defendant. Therefore, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

BEILFUSS, C.J., took no part.

HEFFERNAN, J. *(dissenting).* The intoxication instruction is clearly erroneous because it contains language shifting the burden of persuasion on intent onto the defendant. This court has held that jury instructions that could reasonably be understood as "placing on the defendant the burden of persuading the jury that he lacked the specific intent to kill due to intoxication" denied the defendant his right to due process and required reversal of his conviction. *State v. Schulz,* 102 Wis. 2d 423, 426, 307 N.W.2d 151 (1981).

The instructions in this case are not identical to the instructions in *Schulz,* but, as the court of appeals recognized, the differences are not constitutionally significant. The error here is at least as egregious as that in *Schulz.* Because "a reasonable juror could have misunderstood the allocation of the burden of proof" (102 Wis. 2d at 431), I would affirm the decision of the court of appeals.

I am authorized to state that Justice Abrahamson joins in this dissent.