Lennon WILLIFORD, Petitioner,

v.

Warren YOUNG, Superintendent, Waupun Correctional Institution and Bronson C. La Follette, Attorney General of the State of Wisconsin, Respondents.

Civ. A. No. 84–C–1241.

United States District Court,
E.D. Wisconsin.

March 22, 1985.

Michael Yovovich, Asst. State Public Defender, Madison, Wis., for petitioner.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

TERENCE T. EVANS, District Judge.

On November 25, 1978, during the early morning hours, Lennon Williford walked into the Racine Police Department and said "I made a mistake ... I shot my wife." Three days later, Williford was charged with first degree murder. In May of 1979, he was tried before a jury and convicted of the charge. Williford appealed and, on September 9, 1980, the Wisconsin Court of Appeals reversed his conviction on one of his claims of error, that the trial court had failed to submit a manslaughter-heat-of-passion option to the jury as a lesser included offense. The State appealed to the Wisconsin Supreme Court and the Supreme Court reversed the Court of Appeals' deci-

sion. *State v. Williford,* 103 Wis.2d 98, 307 N.W.2d 277 (1981).

In November of 1981, Williford filed a collateral attack on his conviction pursuant to § 974.06, Wis.Stats., alleging that the intoxication instruction given in his case impermissibly shifted to him the burden of persuasion on the element of intent. The trial court denied the request for relief and the Wisconsin Court of Appeals, on January 7, 1983, affirmed. The Wisconsin Supreme Court denied review on February 15, 1983. On September 27, 1984, almost six years after he entered the Racine Police Station to admit the shooting, Williford petitioned this court for a writ of habeas corpus.

At the time of the fatal shooting, Lennon Williford and Annabelle Williford were separated; she had filed for a divorce. Like the marriage, the separation was stormy; the couple fought over other women, other men, and money. Annabelle had gone out on the evening of November 24, 1978, and returned home at approximately 1:00 a.m. November 25. In her home were Williford's daughter Wanda and Wanda's son, Annabelle's daughter Dana Fraline, and twin boys who were the children of Annabelle and Williford. Wanda was sleeping on a couch in the living room; the other children were upstairs.

Williford came to the door and Annabelle invited him in. Wanda awoke when he came in and was awake briefly while he was there, but was asleep when the shooting took place. She awoke to the sounds of screaming and gunshots. Dana Fraline awoke and ran downstairs. Wanda saw what had happened and ran to Williford and began hitting him. She asked him why he had shot Annabelle. He did not respond. He left the home, and soon thereafter arrived at the Racine Police Station.

The issues Williford raises in his petition for habeas corpus are (1) that the failure to instruct the jury on the lesser included offense of manslaughter (heat of passion) denied him due process of law; (2) that he was denied the effective assistance of counsel; and (3) that the modified intoxication instruction given at his trial shifted the burden of persuasion on the issue of intent to the defense.

That the trial judge did not instruct the jury on manslaughter, Williford contends, deprived him of due process of law. The propriety of giving a lesser included offense instruction is an issue of obvious importance in any criminal case. It is, however, a matter which is not easily discussed in specific constitutional terms.

In *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the court held that, in a capital case, if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, the State is constitutionally prohibited from withdrawing from the jury the option of the lesser included offense. In *Nichols v. Gagnon,* 710 F.2d 1267, 1271 (7th Cir.1983), the Seventh Circuit declined to extend the rule to non-capital cases:

> Although the Court may someday decide to extend the rule of *Beck* to noncapital cases, we are not inclined to anticipate its doing so.

The Court of Appeals perceived a tension between the important goal of preventing innocent persons from being convicted and the fact that *Beck* does not deal with a "specific constitutional right," and involves a question more appropriately handled on direct review:

> The innocent are not a despised and vulnerable minority who need the protection of the federal courts.

■ The standard of review on this issue in a habeas proceeding remains the standard articulated in *Peery v. Sielaff,* 615 F.2d 402 (7th Cir.1979). It is that:

> ... The failure to instruct on a lesser included offense, even if incorrect under state law, does not warrant setting aside a state conviction unless "failure to give the instruction could be said to have amounted to a fundamental miscarriage of justice." *Nichols* at 1269.

■ Here the Wisconsin Supreme Court has determined that the failure to give the instruction is not error as a matter of state

law. Presumably, the Wisconsin Supreme Court has the last word on the state law issue. The issue before me is whether the failure to instruct on manslaughter in this case amounted to a fundamental miscarriage of justice. It did not. There is virtually no evidence in the record to support a heat of passion instruction.

The decision of the state judge not to give the manslaughter instruction was made with extreme care. During the conference on jury instructions counsel and the court had somewhat differing memories of what the testimony of Williford showed. The court had the testimony read back so that it was "fresh in [their] minds." Tr. 388, 390. Williford's own testimony—and he was the only observer—does not justify the instruction. Somewhat secondarily, Wanda testified that when she was briefly awake in the living room with her father and Annabelle, everything was calm, which was why she went back to sleep. She slept until the gunshots awakened her. On that record, it cannot be said that failure to give a manslaughter instruction resulted in a miscarriage of justice. In leaving this issue, however, it is interesting to note that Williford was not left without anything to argue about to the jury. The trial judge did instruct on the LIO of second degree murder. If the jury did not see fit here to move down one peg to second degree, it is doubtful they would have, even if given the option, slid down two to manslaughter. The jury obviously believed that the four shots that Williford pumped into his estranged wife added up to murder one, a conclusion, based on this record, that appears to be inescapable.

■ Williford next argues in his petition for habeas corpus that he was denied the effective assistance of counsel. The standard to be used in reviewing a sixth amendment ineffective assistance of counsel claim has been recently considered in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Williford claims first that counsel was ineffective because he failed to investigate and find an important witness, Patricia Bell. The witness had been interviewed by the Public Defender's Office, but was not contacted by trial counsel.

Specifically regarding the duty to make investigation, the court in *Strickland* stated 104 S.Ct. at 2066:

Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Here counsel presented witnesses who testified to the relationship between Williford and his wife. Bell's testimony would have gone to this issue and would not have added significant additional information. Her testimony could not have maligned the victim's character more thoroughly than did the testimony of Attorney Vincent Vassallo, whose statements regarding Annabelle's abuse of the children nearly caused

a mistrial. In addition, there was testimony in the record from more than one source that Annabelle brought her young boyfriend to a hearing in the office of the Family Court Commissioner regarding her request for "more money" from Williford. There was also testimony that Annabelle carried a gun. The only additional information Bell would have given was to state that Annabelle was very irritable following a hysterectomy performed six years prior to her murder. If it was incompetent for the attorney not to have found Bell—and I do not think that it was—it certainly cannot be said to have been so serious as to have deprived Williford of a fair trial.

■ Another way in which counsel was said to have been ineffective was in his failure to object to the introduction of two misdemeanor convictions which occurred at least twenty years previously. Respondent concedes that it was error to admit the convictions; presumably then counsel should have objected to their use.

In this context, it is especially important to keep in mind the strength of the State's case against Williford, not the least part of which is his immediate confession to the Racine Police Department. In that context, to argue that two misdemeanor convictions prejudiced the jury into finding Williford guilty is absurd.

■ Finally, it is argued that counsel was incompetent because of his failure to object to six instances in which the prosecutor violated *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), by referring to Williford's request to consult with an attorney.

Because one of the defenses here was intoxication, respondent maintains that the questions regarding Williford's invocation of his right to counsel were to show that he was acting rationally and soberly immediately after the shooting. Counsel's failure to object to this testimony could be based on a reasonable belief that such a use of the evidence was permissible.

More importantly, however, it is extremely difficult to imagine how such questions prejudiced the defendant who had, just prior to asking to consult with his lawyer, confessed the shooting. Surely any citizen who shot another person for whatever reason under whatever extenuating circumstances would want to see a lawyer. It is when a suspect denies committing the act and the prosecutor refers to his desire to see a lawyer that impermissible inferences can creep into a trial. In short, if counsel should have objected to this material, and if his failure to object under these circumstances can be said to have made his representation ineffective, petitioner has nevertheless failed to carry his burden in showing that he was prejudiced in any manner by these references.

■ Williford's final contention is that the jury instruction on intoxication impermissibly shifted to him the burden of persuasion on an essential element of the crime of first degree murder—intent. The instruction included the following language:

The defense of intoxication is an issue in this case.

The Criminal Code of Wisconsin provides that an intoxicated condition is a defense if such condition negatives the existence of a state of mind essential to the crime.

Ordinarily, intoxication will not relieve a person from responsibility for his criminal acts. However, where a certain state of mind or intent is an essential element of the crime, an accused is not guilty if, at the time of the commission of the alleged criminal act, he was so intoxicated that he was unable to form the essential intent or have the essential mental state.

The "intoxicated or drugged condition" to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse to criminal adventures. It is that degree of complete drunkenness which makes a person incapable of forming an act or commit a crime. To be relieved from responsibility for criminal acts it is

not enough for a defendant to establish that he was under the influence of intoxicating beverages. He must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged.

In this case, defendant is charged with the crime of 1st degree murder of which one of the essential elements is intent to kill. The defendant claims that, at the time of the alleged offense, his condition from the use of intoxicating liquor was such that he did not form such intent.

If the defendant, because of his condition, was incapable of forming and, therefore, did not form the intent to kill, then you must not find him guilty of 1st degree murder as charged in the information.

If you have any reasonable doubt as to whether or not he was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of 1st degree murder.

The jury instructions also, however, included specific statements regarding the presumption of innocence and the fact that the State has the burden of proof beyond a reasonable doubt:

The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.

The burden of proving the defendant guilty of every element of the crime charged (or submitted for your consideration) is upon the State. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty.

If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and find him not guilty.

The issue as argued by the petitioner is first whether the intoxication instruction is more like the one found unconstitutional in *State v. Schulz*, 102 Wis.2d 423, 307 N.W.2d 151 (1981), or the one found constitutionally permissible in *Barrera v. State*, 109 Wis.2d 324, 325 N.W.2d 722 (1982). Without going through a line-by-line comparison, I find that the instruction here is similar to that in *Barrera*. Presumably, then, the instruction is acceptable under Wisconsin law. Presumably, also, that is why the Wisconsin court did not overturn Williford's conviction on this issue.

The issue in federal court is whether this instruction offends the United States Constitution. I find that it does not. Read in the context of all of the instructions, no reasonable juror could have concluded that Williford had the burden of persuasion on an essential element of the crime.

IT IS THEREFORE ORDERED that the petition of Lennon Williford for the issuance of a writ of habeas corpus is DENIED.